UNITED STATES, Appellee

v.

Jeffrey D. BEATTY, Master Sergeant
U.S. Air Force, Appellant

No. 06-0793

Crim. App. No. 35523

United States Court of Appeals for the Armed Forces

Argued February 6, 2007

Decided April 23, 2007

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


Counsel


For Appellant:  William E. Cassara, Esq. (argued); Lieutenant Colonel Mark R. Strickland and Major Anniece Barber (on brief).


For Appellee:  Captain Jefferson E. McBride (argued); Colonel Gerald R. Bruce, Lieutenant Colonel Robert V. Combs, and Major Kimani R. Eason (on brief).


Military Judge:  R. Scott Howard


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

Master Sergeant Jeffrey D. Beatty was convicted by a general court-martial with members and notwithstanding his pleas, of one specification of indecent liberties with a child and one specification of indecent acts with a child,[1] both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000).  He was acquitted of one specification of assault, in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2000).  He was sentenced to confinement for eighteen months and reduction to E-1.  The convening authority approved the findings and sentence, waiving the mandatory forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b (2000), for a period of six months for the benefit of Appellant's dependents.  The United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.  United States v. Beatty, No. ACM 35523, 2006 CCA LEXIS 124, 2006 WL 1510870 (A.F. Ct. Crim. App. May 30, 2006).

We granted review on the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS FAILED
> TO CONDUCT A PROPER REVIEW UNDER ARTICLE 66(c), UCMJ,
> BECAUSE THE COURT CONSIDERED EVIDENCE OUTSIDE THE
> RECORD IN CONDUCTING ITS FACTUAL AND LEGAL SUFFICIENCY
> REVIEWS.

---

[1] The members excepted the language "and giving her a vibrator" in the indecent acts specification.

At the time of his court-martial in October 2002, Appellant was forty-one years old and had twenty-three years of active duty service in the Air Force. He was a master sergeant (E-7). He was married and had two children, a son and a daughter, JB, who was seventeen years old at the time of the court-martial.

JB testified that she arrived at Ellsworth Air Force Base, South Dakota, with her family in the fall of 1996 and moved into base housing. The family remained there until August 2001, when they moved off base. JB lived off base with her family until December 2001, when she moved out as a consequence of the allegations that gave rise to the court-martial. JB further testified that, beginning in the spring of 2000 when she was fourteen or fifteen, Appellant called her into his bedroom and masturbated in front of her while he checked her homework. This occurred two or three times per week. This activity continued after the family moved off base, though not as frequently.

Soon after the move to off-base quarters, Appellant went on temporary duty to Saudi Arabia. JB testified that upon Appellant's return he had acquired two piercings on the underside of his penis, each containing a metal rod with a ball at each end. In e-mail communications during the absence, JB testified, Appellant stated that he was bringing her a gift. He described it as being eight inches long, round, and usable in bed. She thought he was referring to a vibrator. A few days

after he returned, he did indeed leave a vibrator on her bed, stating that it was for her mother but she could use it as well. The last incident involving Appellant and JB occurred shortly before she reported Appellant to authorities.  She went into his bedroom (apparently voluntarily) to find him masturbating.  He asked her to get some oil from the bathroom.  She initially refused, but eventually did get it and dripped it on his penis without direct contact.

Shortly after this incident, JB reported Appellant's conduct to a friend and the friend's mother.  The police were called; JB was moved to a group home, and an investigation and ultimately this court-martial ensued.

The credibility of JB was a significant issue at trial.  On cross-examination, she admitted to having a problem with lying and being counseled for doing so.  She further admitted to lying to the police about her previous sexual encounters with boys. Her brother testified that, although she told him things of a personal nature, she had never mentioned the incidents with Appellant.  Both the brother (who admitted that he was angry with JB) and their mother opined that JB was untruthful.[2]

_____

[2] In two statements (the first one unsworn, the second an affidavit) filed well over a year after trial, JB recanted her testimony against Appellant.  The Court of Criminal Appeals, in connection with Appellant's petition for a new trial, ordered a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).  Beatty, No. ACM 35523, 2006 CCA LEXIS 124,

4

Appellant testified that he did not call JB into the bedroom while he was masturbating, but did state that she had walked in on him while he engaged in the act.  He further stated that the allusion to a round, eight-inch item was to a perfume bottle, not a vibrator.

## II.

The Courts of Criminal Appeals, like this Court and indeed the entire system of military justice, are creatures of statute, enacted by Congress pursuant to the express constitutional grant of power "[t]o make Rules for the Government and Regulation of the land and naval Forces."  U.S. Const. art. I, § 8, cl. 14; William Winthrop, Military Law and Precedents 17 (2d ed. 1920).

In enacting the UCMJ in 1950, Congress saw fit to give the Boards of Review (now the Courts of Criminal Appeals) very broad powers with respect to the approved findings and sentences of courts-martial.  In language substantively unchanged since 1950, Article 66(c), UCMJ, states:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority.  It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.  In

at *2, 2006 WL 1510870, at *1.  Ultimately, the Court of Criminal Appeals, on the strength of the DuBay record, denied the petition for a new trial.  2006 CCA LEXIS 124 at *2, 2006 WL 1510870 at *1.  The recantations and petition for a new trial are not at issue before us.

5

> considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. 866(c) (2000) (emphasis added).

Since their original incarnation as Boards of Review, it has been recognized that the Courts of Criminal Appeals are "intermediate appellate judicial tribunals." United States v. Fagnan, 12 C.M.A. 192, 194, 30 C.M.R. 192, 194 (1961); United States v. Whitman, 3 C.M.A. 179, 180, 11 C.M.R. 179, 180 (1953). In words that have often been cited, we described the Article 66(c), UCMJ, authority as an "awesome, plenary de novo power of review [that] grants unto the Court . . . authority to, indeed, 'substitute its judgment' for that of the military judge. . . . [and] for that of the court members." United States v. Cole, 31 M.J. 270, 272 (C.M.A. 1990). A Court of Criminal Appeals may not affirm the findings and sentence of a court-martial unless it finds them to be both factually and legally sufficient. Article 66(c), UCMJ.

From the beginning of jurisprudence under the UCMJ, questions arose as to what constituted the "entire record" for purposes of Article 66(c), UCMJ, review, regarding both findings and sentence.[3]  In a succession of early cases, we established

---

[3] The first case ever decided by the Court of Military Appeals established the proposition that this Court would not determine

that the review of findings -- of guilt and innocence -- was limited to the evidence presented at trial.  United States v. Duffy, 3 C.M.A. 20, 23, 11 C.M.R. 20, 23 (1953) (regarding convening authority's review); Whitman, 3 C.M.A. at 180, 11 C.M.R. at 180; United States v. Lanford, 6 C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955); see United States v. Bethea, 22 C.M.A. 223, 224-25, 46 C.M.R. 223, 224-25 (1973); United States v. Holt, 58 M.J. 227, 232 (C.A.A.F. 2003).  What constitutes the "entire record" for review of sentence appropriateness has been understood to include not only evidence admitted at trial, but also the matters considered by the convening authority in his action on the sentence.  Bethea, 22 C.M.A. at 225, 46 C.M.R. at 225; Fagnan, 12 C.M.A. at 195, 30 C.M.R. at 195.[4]

In this case, as noted earlier, the Air Force Court of Criminal Appeals affirmed the findings and sentence.  One of the issues raised before the Court of Criminal Appeals by Appellant was the legal and factual sufficiency of the evidence regarding his convictions for indecent liberties

---

questions of fact, but was limited to questions of law.  United States v. McCrary, 1 C.M.A. 1, 3, 1 C.M.R. 1, 3 (1951).

[4] In Lanford, 6 C.M.A. at 379, 20 C.M.R. at 95, Chief Judge Quinn contrasted the limited nature of the record before the Board of Review when acting on sentence appropriateness with the freedom of the convening authority, who, according to Judge Brosman in United States v. Coulter, 3 C.M.A. 657, 663, 14 C.M.R. 75, 81 (1954) (Brosman, J., concurring)), could ask "a guy named Joe" about an appropriate sentence.

with a person under sixteen and indecent acts with another.
2006 CCA LEXIS 124, at *3, 2006 WL 1510870, at *1.  In
reviewing for sufficiency, the Court of Criminal Appeals
first pointed out that the evidence as to these charges and
specifications was "based almost entirely" on the
allegations of JB, and noted that her credibility was an
issue.  2006 CCA LEXIS 124, at *3-*4, 2006 WL 1510870, at
*1.  The court then stated:

> JB was 17-years-old [sic] when she testified at trial,
> and she was <u>unwavering in her account of the
> appellant's actions.  JB testified four times under
> oath during the course of the proceeding:  Twice
> during pretrial motion practice, once on the merits,
> and once in presentencing</u>.
>
>          . . . .
>
> In her trial testimony, JB admitted to a history of
> telling lies to numerous people about a variety of
> things.  <u>But, she was consistent in her testimony
> throughout the proceeding and presented a nearly
> clinical description of the appellant's actions</u>.  We
> conclude a rational factfinder could have found the
> appellant guilty of all the elements of the offenses
> beyond a reasonable doubt.

2006 CCA LEXIS 124, at *5-*6, 2006 WL 1510870, at *2 (emphasis
added).

Appellant argues that the Court of Criminal Appeals made
"credibility assessments and factual and legal sufficiency
determinations based upon evidence never put before the court
members."  This "injected fundamental unfairness" into the case
by "relying upon tactics that are off-limits even to the most

zealous of trial counsel."  The Government responds by maintaining that the court did not make credibility determinations based on evidence not before the members, but simply "determined that the testimonies were consistent" with the evidence of record, which "bolstered their determination regarding her credibility."

### III.

We impute no intent to engage in "fundamental unfairness" or rely upon "off-limits" tactics to the Court of Criminal Appeals.  The judges of that court, as senior judge advocates, are presumed to know and correctly apply the law.  United States v. Washington, 57 M.J. 394, 399-40 (C.A.A.F. 2002). Nonetheless, the action of the court in assessing JB's credibility for purposes of determining the factual and legal sufficiency of the evidence is at best ambiguous.  We cannot determine from this record whether the court in fact considered JB's testimony in pretrial motion practice or in presentencing on the issue of her credibility.  In a case such as this, where the underlying validity of the Article 66(c), UCMJ, review is in question, we do not test for prejudice; rather, the remedy is to remand the case for a proper factual and legal sufficiency review of the findings of guilty.  Holt, 58 M.J. at 233; United States v. McAllister, 55 M.J. 270, 277 (C.A.A.F. 2001) (dictum).

United States v. Beatty, No. 06-0793/AF

Our remand of this case should not be construed as any determination by this Court as to either the credibility of JB or whether the Court of Criminal Appeals could or could not reach the same result with respect to the legal and factual sufficiency based on the evidence presented at trial. Both legal and factual sufficiency are matters for the lower court to consider de novo. See United States v. Najera, 52 M.J. 247, 249 (C.A.A.F. 2000) (service courts review legal sufficiency questions de novo); United States v. Ward, 64 M.J. 79 (C.A.A.F. 2006) (summary disposition) ("[T]he Court of Criminal Appeals conducts a de novo review of factual sufficiency.").

IV.

The decision of the United States Air Force Court of Criminal Appeals is set aside. The case is returned to the Judge Advocate General of the Air Force for remand to that court for further proceedings consistent with this opinion.