# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Staff Sergeant EDDY C. SOTO**
**United States Air Force**

**ACM 38422**

**16 September 2014**

Sentence adjudged 16 March 2013 by GCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Matthew D. Van Dalen (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 48 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan and Captain Lauren A. Shure.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Jason S. Osborne; and Gerald R. Bruce, Esquire.

*En Banc*

ALLRED, HECKER, MITCHELL, WEBER, TELLER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A military judge sitting as a general court-martial accepted the appellant's pleas of guilty to two specifications of violating a lawful general regulation, one specification of making a false official statement, and two specifications of adultery, in violation of Articles 92, 107 and 134, UCMJ, 10 U.S.C. §§ 892, 907, 934. Contrary to the appellant's plea, the military judge convicted the appellant of one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge acquitted the appellant of two other specifications alleging aggravated sexual assault and wrongful sexual contact.

The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 48 months, forfeiture of all pay and allowances, and reduction to E-1.

On appeal, the appellant challenges the factual sufficiency of his rape conviction and the appropriateness of his sentence. We sua sponte elected to consider this appeal en banc and provided the parties an opportunity to file supplemental briefs on a narrower aspect of the factual sufficiency of the conviction than that originally briefed. We find the appellant's rape conviction factually insufficient, rendering moot the sentence appropriateness issue.

*Background*

The appellant served as a military training instructor (MTI) in basic military training at Joint Base San Antonio-Lackland, Texas. During the charged time frame, a punitive Air Education and Training Command instruction prohibited instructors, such as the appellant, from developing or attempting to develop a personal, intimate, or sexual relationship with a trainee, including former basic trainees who remained in follow-on technical training school. The instruction also prohibited such relationships with a trainee's immediate family member.

In 2011, the appellant engaged in inappropriate relationships with two female Airmen who were formerly trainees in his basic military training flight. First, he twice had sexual intercourse with an Airman who remained at technical training school in San Antonio. Second, he twice had sexual intercourse with the spouse of one of his trainees who had come to see her husband graduate basic military training. This spouse was also a former trainee in the appellant's flight, though she was no longer in trainee status. For these two prohibited relationships, the appellant pled guilty to two specifications of violating the Air Education and Training Command instruction. He also pled guilty to two specifications of adultery because he was married at the time of the sexual encounters and so was one of the female Airmen involved.[1] When Air Force Office of Special Investigations agents questioned the appellant about his relationships with trainees, he falsely stated that he had never engaged in sexual relationships with a trainee, leading to his plea of guilty for making a false official statement.

The Government also charged the appellant with rape, aggravated sexual assault, and wrongful sexual contact resulting from his relationship with another of his former trainees, SrA TS.[2] After SrA TS completed basic training and technical training school,

---

[1] The appellant was married at the time of both incidents. However, the Specification of Charge IV, alleging adultery by wrongfully having sexual intercourse with the spouse of the appellant's trainee, fails to allege that the appellant was married at the time of the sexual intercourse. We find no legal deficiency caused by this omission, since the specification does properly allege that the female Airman was married to another person.

[2] At the time of the charged actions, Senior Airman TS's rank was Airman First Class and her last name was different.

she e-mailed the appellant along with other instructors to let them know she had arrived at her first duty station in California. The appellant promptly replied to her message, and the two began communicating via e-mails, Facebook messages, and text messages. The messages grew more personal, and the two discussed meeting in person. SrA TS purchased an airline ticket to visit the appellant in San Antonio in October 2010. She offered to procure a hotel room and rental car for herself, but the appellant informed her she could stay at his apartment and he would drive her where she wanted to go. SrA TS agreed to this.

The incident that led to the rape specification took place soon after SrA TS arrived in San Antonio. She stated the appellant met her at the airport and as she entered his car, he promptly pushed her into her seat and kissed her. She stated she attempted to distract him by stating she wanted to go out to eat, but the appellant insisted they stop by his apartment to drop off her luggage. SrA TS stated she used the restroom in his apartment, and when she emerged from the restroom, the appellant hugged her, kissed her, took her to the bed, pulled down her shorts, and had sexual intercourse with her. SrA TS stated this was against her will; she pushed him and told him, "No, I'm not ready," to no avail.

At trial and on appeal, the parties focused much of their attention on SrA TS's actions following this charged rape. SrA TS continued to stay at the appellant's apartment and slept in his bed for her five-day stay in San Antonio. When she returned to California, she continued to communicate with the appellant and sent him explicit pictures of herself. She also communicated with a friend from basic training that she was dating the appellant, that he was her boyfriend, and that the relationship was a "dream come true." Although she considered herself in a relationship with the appellant, SrA TS also remained in an "on again, off again" relationship with her boyfriend in California during this time; however, the relationship was strained.

Over the next several months, SrA TS visited the appellant twice more, both times bringing family members to view houses for the family's possible move to San Antonio. Some consensual sexual activity took place between SrA TS and the appellant during SrA TS's visits to San Antonio, and she stayed with the appellant during each visit. During the last visit, SrA TS stated that she woke up after consuming alcohol to find herself unclothed in the appellant's apartment smelling like she had sex. However, SrA TS could not state positively whether intercourse occurred, and she testified that she did not feel like she had sex. The appellant was acquitted of aggravated sexual assault and wrongful sexual contact resulting from this incident. Soon after this last visit, SrA TS and the appellant stopped communicating, and SrA TS married her boyfriend in California.

SrA TS did not report any sexual assault to the authorities. Investigators learned of this matter when they interviewed SrA TS as part of an investigation into the appellant's relationships with trainees.

ACM 38422

SrA TS was of Vietnamese origin. At trial, the Government called an expert in Southeast Asian cultures to explain how Vietnamese culture's views on rape and women may help explain SrA TS's actions after the charged events. Trial defense counsel effectively explored the limitations of the expert witness's testimony. On appeal, the appellant alleges that his conviction for rape is factually insufficient, asserting that SrA TS's actions following the charged incident undermine her credibility and demonstrate her consent to sexual activity with the appellant. Alternatively, he argues that the adjudged and approved sentence is inappropriately severe. We invited the parties to brief whether the evidence introduced at trial about the charged rape itself rendered the conviction factually sufficient, without focusing on SrA TS's actions after the first charged act.

*Factual Sufficiency*

We review issues of factual sufficiency de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987), *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our factual sufficiency determination is limited to a review of the "entire record," meaning evidence presented at trial. *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973); *see also Reed*, 54 M.J. at 44.

The appellant was convicted of causing SrA TS to engage in sexual intercourse "by using physical strength or power or restraint applied to her person sufficient that she could not avoid or escape the sexual contact." We have reviewed the record of trial and evaluated the arguments by the appellant and the Government, including the supplemental briefs submitted by the parties. Making our own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt and making allowances for not having personally observed the witnesses, we are not convinced of the appellant's guilt of rape beyond a reasonable doubt. We make this finding on narrower grounds than the parties' focus in their initial briefs, focusing solely on the evidence introduced about the charged rape itself.

The parties initially centered their attention on SrA TS's actions after the charged incident, arguing whether SrA TS's actions undermine her credibility or demonstrate her

consent to the sexual intercourse at issue. We find it unnecessary to evaluate SrA TS's actions after the charged act because we find the Government failed to introduce sufficient evidence at trial that the appellant used force against SrA TS to cause the sexual act. The appellant was charged under the version of Article 120, UCMJ, in effect from 2007 to 2012, which made it an offense to cause another person of any age to engage in a sexual act by using force against that other person. Article 120(a), UCMJ (2007). In pertinent part, "force" was defined as follows: "action to compel submission of another or to overcome or prevent another's resistance by . . . strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual conduct." Article 120(t)(5), UCMJ (2007).

At trial, the Government elicited only cursory information about the intercourse that was charged as rape. The entire substance of SrA TS's testimony consists of the following:[3]

> As soon as I came out [from the restroom] he started hugging me and try[ing] to guide me on his bed and trying to have sex with me.
>
> . . . .
>
> I'm just pretty scared and didn't know what to do.
>
> . . . .
>
> I said, "No, I'm not ready."
>
> . . . .
>
> I was afraid because like I couldn't believe that I came to San Antonio and I [was having] sex with my [MTI]. And then another thing I was scared because I already [was having] a sexual relationship with [another] male. [It doesn't] matter [if] it's my fault or his fault, it's still considered cheating on my boyfriend at that time.
>
> . . . .
>
> [When I came out of the restroom], he wrapped [his arms] around me.
>
> . . . .
>
> Then he tried kissing me; kissing my lips and my neck.
>
> . . . .
>
> We [were] moving. He kind of like turn[ed] me around towards the bed.
>
> . . . .
>
> Then he's got my back on the bed and he stopped kissing and tried to take off my pants. Then we started having sex.

---

[3] SrA TS is a non-native English speaker. While she articulated herself clearly at trial, certain phrases quoted here have been slightly altered to represent standard English without changing the substance of her testimony. These changes are reflected in the bracketed text.

Trial counsel asked SrA TS if she tried to push him; she responded yes. She explained, "I tried to get out from it but he's really heavy and he was on top of me. So I just quit." Trial counsel asked what the appellant said when SrA TS said no and tried to push him. She said, "He said, 'It's okay. I love you. You're so pretty.'" In response to this, SrA TS told the appellant, "I'm not ready." SrA TS does not remember if the appellant responded to this statement. Trial counsel then asked what SrA TS meant when she testified that he was too heavy and she stopped. She said, "I just quit. It's like I didn't try to get out anymore. My hands just quit . . . [b]ecause he [was] heavy and I didn't think I could do anything."

On cross-examination, SrA TS's testimony about the charged act was again brief. Asked what happened when the appellant started kissing her, SrA TS testified, "He guid[ed] me to the bed and then tr[ied to] pull my pants down." On redirect, trial counsel asked what SrA TS told the appellant when he began kissing her. SrA TS responded, "I told him that 'No, I'm not ready.'" Asked if she tried to push the appellant, she responded, "I tried to push him." She then testified that the appellant did not stop when she did this.

This testimony is the entirety of the evidence produced on the issue of whether the appellant used force to cause the sexual conduct. Based on these limited details in the record about the appellant's actions, we find the evidence factually insufficient to support the rape conviction. The record does not convince us beyond a reasonable doubt that the appellant took "action to compel submission of [SrA TS] or to overcome or prevent [her] resistance by [applying] strength, power, or restraint applied to [her], sufficient that [she] could not avoid or escape the sexual conduct."

The Government elicited three primary pieces of evidence about the charged act itself to build its case: 1) SrA TS told the appellant "No, I'm not ready" at some point after the appellant began his advances; 2) SrA TS pushed the appellant while he was on top of her in an unsuccessful attempt to get the appellant off her; and 3) SrA TS was afraid during the encounter. The testimony on each point was extremely brief and left several questions unanswered. For example, the Government did not elicit sufficient context about when the "No, I'm not ready" statement occurred, what her tone of voice was, whether the appellant could have been expected to hear her, or whether the two said anything else before or during the intercourse. SrA TS testified that she pushed the appellant while he was on top of her, but trial counsel did not elicit sufficient evidence to indicate that the appellant used force to overcome the pushing. On the third point, SrA TS did testify that she was afraid during the encounter, but she never testified that she was afraid of the appellant; rather, she only testified that she was afraid she was having sex with her MTI and she would be seen as cheating on her boyfriend.

ACM 38422

The Government's evidence was scarce in other respects. There is no evidence about the distance between the point where the appellant kissed SrA TS and the bed, and there is little to no evidence about how the appellant got SrA TS to the bed. (Her testimony on cross-examination merely indicates that he "guided" her to the bed.) SrA TS indicated that she was on her back at some point leading up to the intercourse and he was "too heavy," but there is no unambiguous testimony that indicates he was on top of her throughout the intercourse. SrA TS's testimony scarcely mentions the intercourse itself, and trial counsel did not even ask SrA TS if the appellant used any restraint or force other than the fact he was on top of her to complete the sexual conduct.

We do not discount SrA TS's testimony, and we recognize she portrayed what could have been a sinister act by the appellant. The appellant was previously SrA TS's military training instructor, and he placed SrA TS in a situation where they would be alone in an environment unfamiliar to her without her own means of transportation. It is certainly possible the appellant used some combination of his coercive power as SrA TS's former MTI, his knowledge that she was dependent on him for shelter and transportation during the visit, his body weight, and his refusal to heed SrA TS's cues that she was not ready to cause SrA TS to have sexual intercourse.

However, the Government charged the appellant with using force to complete a rape. Whatever mental pressure the appellant utilized on his former trainee, the Government retained the burden to demonstrate that the appellant used physical force to cause the intercourse. The Government did not satisfy its burden. Whatever possibilities SrA TS's testimony raises about the appellant's actions, it is not this court's role to speculate on what possibly occurred in the appellant's bedroom or to fill in the gaps left by the Government's presentation of its case. We also may not affirm the conviction simply because the record of trial portrays the appellant as an unsavory character. Rather, we are prohibited from affirming a conviction unless we find it both factually and legally sufficient. *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007); *United States v. McAllister*, 55 M.J. 270, 277 (C.A.A.F. 2001). We take this charge seriously, as our unique factfinding authority "provide[s] a source of structural integrity to ensure the protection of service members' rights within a system of military discipline and justice where commanders themselves retain awesome and plenary responsibility." *United States v. Jenkins*, 60 M.J. 27, 29 (C.A.A.F. 2004). Under these facts, we simply are not personally convinced that the Government satisfied its heavy burden of proving force beyond a reasonable doubt. The Government's evidence is too thin to satisfy us beyond a reasonable doubt that the appellant used force to cause the sexual conduct. Put simply, it appears the Government was so focused on explaining SrA TS's actions after the charged act that it neglected to have the witness adequately detail the charged act itself in a manner that permits us to find the appellant applied strength, power, or restraint

to SrA TS, sufficient that she could not avoid or escape the sexual conduct.[4]  We therefore find the appellant's rape conviction factually insufficient.[5]

We are aware of our statutory authority to affirm a lesser included offense, even where such lesser included offense was not instructed upon or considered at trial. Article 59(b), UCMJ, 10 U.S.C. § 859(b); *United States v. Upham*, 66 M.J. 83, 88 (C.A.A.F 2008).  Given the minimal facts presented in this record, we decline to affirm any lesser included offense.

*Sentence Reassessment*

Having found the appellant's rape conviction factually insufficient, we now must decide whether we can accurately reassess the appellant's sentence, or whether we must return this case for a sentence rehearing.  This court has "broad discretion" in deciding whether it may reassess a sentence to cure error.  *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).  A court of criminal appeals may reassess a sentence "if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity."  *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006).  In making this determination, we consider factors such as:

(1) Dramatic changes in the penalty landscape and exposure.

(2) Whether an appellant chose sentencing by members or a military judge alone. As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members. This factor could become more relevant where charges address service custom, service discrediting conduct or conduct unbecoming.

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or

_____

[4] The narrow basis of our holding renders it unnecessary to cast any aspersions on SrA TS's credibility, and we recognize that the nature of rape cases dictates that precise testimony about every detail is rarely possible.
[5] While this case was pending our review, the appellant moved to attach an analysis of his cell phone and related documents to the record of trial, documents he averred helped demonstrate the factual insufficiency of his rape conviction.  He also petitioned for a new trial based on this evidence he stated was newly discovered.  Our decision today renders these matters moot, and the court need not act on these filings.  Finally, during supplemental briefing, the appellant filed an additional supplemental brief that alleged the rape specification failed to specify the event charged.  We see no ambiguity in the specification and find that the rape specification clearly alleges that the charged rape involves the incident discussed in this opinion rather than another sexual act that took place the following morning.  In any event, our holding today renders the appellant's complaint moot.

aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) (internal citations omitted)

Applying these considerations, we are unable to determine to our satisfaction what the appellant's sentence would have been without the rape conviction. The rape conviction was much more serious than the offenses to which the appellant pled guilty. SrA TS's testimony in sentencing proceedings was by far the most aggravating evidence the Government presented. The remaining offenses do not capture the gravamen of the criminal conduct included within the rape charge, and nothing about the actions with SrA TS would have been admissible solely as a result of the appellant's guilty pleas to the remaining offenses. Our finding that the rape conviction is factually insufficient also dramatically changes the penalty landscape, as the maximum sentence to confinement is reduced from life to 11 years. Under these circumstances, the only permissible approach is to remand this case for a sentence rehearing. This action means the appellant's claim of sentence inappropriateness is not ripe for this court's consideration.[6]

*Conclusion*

The findings of guilty for Charge III, Specification 1 are set aside and dismissed. The remaining findings of guilty are affirmed. The sentence is set aside. The record of trial is returned to The Judge Advocate General for remand to an appropriate convening authority who may order a rehearing to determine an appropriate sentence for the affirmed findings of guilty.

---

[6] We note one matter in the convening authority's original action. The action waived mandatory forfeitures for six months for the benefit of the appellant's dependents. However, the convening authority approved the adjudged total forfeitures. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.28.7 (6 June 2013) states that the convening authority must defer, suspend, mitigate or disapprove all or part of adjudged total forfeitures in order to waive any amount of mandatory forfeitures. Should the appellant's sentence on rehearing include forfeitures of pay, the convening authority must follow this guidance if he or she wishes to waive any amount of mandatory forfeitures.

If the convening authority determines that a rehearing on the sentence is impracticable, the convening authority may approve a sentence of "no punishment" or dismiss the remaining charges and specifications.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court