# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201500368**

———————————

**UNITED STATES OF AMERICA**
Appellee

v.

**KHRISTOPHER L. SLAUGHTER**
Staff Sergeant (E-6), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Colonel Howard D. Russell, USMCR.
For Appellant: Lieutenant Rachel E. Weidemann, JAGC, USN.
For Appellee: Major Cory Carver, USMC; Lieutenant Taurean K. Brown, JAGC, USN.

———————————

Decided 29 November 2016

———————————

Before PALMER, MARKS, and FULTON, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

PER CURIAM:

A panel of members with enlisted representation sitting as a special court-martial convicted the appellant, contrary to his plea, of one specification of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012). The members sentenced the appellant to a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant assigned two errors: first, that the trial counsel's arguments on findings and sentencing were improper; and, second, that a bad-conduct discharge is an inappropriately severe punishment for the

appellant's offense. We specified a third issue, whether the record of trial was factually sufficient to support his conviction, and received briefs on the specified issue from the appellant and the government. We decide the specified issue in favor of the appellant and therefore do not reach the two assigned errors.

## I. BACKGROUND

At the time of the offense, the appellant had just completed a tour as a recruiter at Marine Corps Recruiting Station Houston and was in the process of transferring to Camp Pendleton. On 9 December 2014, as he was packing his household goods and preparing to transfer, the appellant was summoned to provide a urine sample that ultimately tested positive for the metabolites of THC, the psychoactive component of marijuana. The accused's urine contained 261 nanograms of metabolite per milliliter of urine, well over the 15-nanogram minimum necessary to establish a positive urine sample test.

The government's case relied primarily on the permissive inference that the presence of THC metabolite in the appellant's urine resulted from the appellant's knowing use of marijuana. The appellant presented an extensive case on the merits and testified in his own defense. The defense theory of the case was that the appellant innocently ingested THC when he ate THC-laced brownies.

The appellant's half-brother, MB, testified for the defense. The appellant and MB had spent time together growing up but had not been close as adults. They made an effort to rekindle a relationship while the appellant was stationed in Houston, but their lifestyles remained very different. MB testified that he regularly used marijuana and had, during a trip to Colorado, legally purchased four commercially produced THC-laced "cosmic" brownies. The brownies were individually wrapped and labeled to indicate they contained THC. MB ate one of the brownies in Colorado and returned to his Houston area home with the rest of the brownies. Since THC-laced brownies were illegal in Texas, he removed the labels. After keeping them in a drawer for a few days, he moved them to his refrigerator.

MB testified that he invited some friends, the appellant, and the appellant's wife to a going-away party to mark the appellant's move from Houston to California. The appellant and his wife arrived in the evening. The appellant went upstairs and played a round of the drinking game "beer pong." After playing beer pong, the appellant and the other guests went downstairs to eat and have more drinks. After eating, MB and the appellant went back upstairs and played another round of beer pong. Halfway through the round of beer pong, the appellant said that he was tired and wanted to stop. The appellant and his brother went into another room, and the appellant fell asleep on a couch, where he spent the night. The next day, MB

noticed that two of the THC-laced brownies were missing. MB did not warn the appellant the brownies contained THC, explaining that he did not want to "tell him about the vice side of my life because he is a Marine."[1] He further explained when he later surmised the appellant possibly ate the brownies, he kept quiet hoping the drugs would "wash out" of his system,[2] and only came forward when he learned of the appellant's positive urinalysis.

The appellant testified and denied knowingly using marijuana. His testimony was largely consistent with his brother's. He testified that he arrived at his brother's party between 1900 and 2000. Guests were drinking beer and playing beer pong. He drank approximately four beers and then looked for some food in his brother's refrigerator. The appellant testified that he found brownies in his brother's refrigerator and ate two of them. After that, he remembered sitting on his brother's couch. Even though the party was not over, the appellant fell asleep on the couch and did not wake up until around 0730 the following day. Although the appellant did not usually go to bed so early, he attributed his drowsiness to his alcohol consumption, the fact he had been up since 0430, and that he had spent much of the day packing his household goods and loading them into a rental truck in preparation for his move.

According to the appellant, after waking up at his brother's house he soon received a message telling him to take part in a unit sweep urinalysis. He thereafter made the 45-minute drive to the downtown Houston recruiting station and reported to the urinalysis coordinator.

Gunnery Sergeant MR, the urinalysis coordinator, testified that the appellant arrived for the urinalysis on time in civilian clothes and that he did not appear nervous. Both he and the appellant testified that the appellant attempted to provide a sample as soon as he arrived but was unable to provide the minimum 30 milliliters of urine. Since he had started to provide a specimen, the appellant was required to stay at the recruiting station until he could provide a sufficient urine sample, which he did 30-60 minutes later. There was no evidence of any irregularities in the urine collection or testing processes.

The appellant learned upon reporting to his new command at Marine Corps Base Camp Pendleton that he had tested positive for marijuana. He testified that he was very surprised to learn that he had tested positive and initially believed his sergeant major was joking with him.

---

[1] Record at 272.

[2] *Id.* at 267.

Mr. CG, a forensic chemist, testified for the government about the Navy Drug Lab's testing of the appellant's urine and interpreted the laboratory's results for the members. He testified that the appellant's urine contained 261 nanograms of THC metabolite per milliliter, over the DoD cutoff of 15 nanograms per milliliter. He also testified that that amount of metabolite found in the appellant's urine was consistent with the appellant having unknowingly consumed edible marijuana products the night before the urinalysis. He further testified that the appellant would not necessarily have noticed the effects of THC ingestion resulting in that level of metabolite. Finally, he agreed that "because . . . distilled THC is colorless and odorless, a person consuming [it in baked goods] would have no idea that it contains THC."[3] In short, he agreed with the defense counsel that the urinalysis results were consistent with the defense's theory of innocent ingestion.

In addition to the testimony of the appellant and his brother, the defense presented eight character witnesses who testified to the appellant's good military character and character for truthfulness.

## II. ANALYSIS

Article 66(c), UCMJ requires this Court to review convictions for factual sufficiency. We conduct this review using a *de novo* standard of review. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Proof beyond a reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001). Rather, presuming neither guilt nor innocence, we take a "fresh, impartial look" at the evidence presented in trial, "to make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The elements of the appellant's offense are first, that the appellant used marijuana; and, second, that his use of marijuana was wrongful. Article 112a, UCMJ. In order to have wrongfully used marijuana, the appellant must have knowingly used it. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part. IV, ¶37(b)(2).

We have considered the parties' pleadings and the entire record, making allowances for not having heard and observed the witnesses. We

---

[3] *Id.* at 201.

believe that there remains a real possibility that the accused did in fact unknowingly ingest THC by eating his brother's brownies. We are not, therefore, personally convinced beyond a reasonable doubt that the appellant knowingly used marijuana.

The government's proof in this case consisted of the positive urinalysis and little else. In contrast, the appellant's theory of innocent ingestion was specific, plausible, and corroborated. It was also consistent with the government's only substantial proof of guilt—the urinalysis results. We find that the government's argument that the appellant meant to take advantage of a drug-test-free period during his transfer to be unsupported. The appellant had not checked out from his command. The record demonstrates that the appellant was still subject to urinalysis testing when he ingested THC, and there is no evidence that would tend to show that the appellant was mistaken about this fact. Additionally, there is no evidence that the appellant—an experienced staff sergeant who worked relatively independently as a recruiter—made any effort whatsoever to avoid the urinalysis. To the contrary, on a day when he did not expect to perform military duties, he made the 45-minute drive from his brother's house and immediately attempted to provide a sample.

We find MB's testimony—that he legally acquired THC-infused brownies in Colorado, removed the labels to facilitate interstate transport, and stored them in his refrigerator—to be plausible. As such, given the evidence that MB neither disclosed his recreational drug-using lifestyle nor warned anyone the brownies contained THC, the appellant would have no reason to believe the brownies were infused with an illegal substance. Further, although we agree familial affection could have motivated MB to falsely testify, we also note that his testimony was self-incriminating and thus against his own penal interests.

The government's forensic chemist testified that it was possible for the appellant to have ingested an amount of THC consistent with the urinalysis results and not have felt the effects of the colorless and odorless THC, particularly since the appellant had been drinking alcohol. While a positive urinalysis result can support an inference that an accused knowingly used a contraband substance, *see United States v. Harper*, 22 M.J. 157, 159 (C.M.A. 1986), the drawing of this inference is not required, and a positive urinalysis result does not shift the burden of proving innocence to the accused. We believe that the record as a whole does not exclude the appellant's theory of innocent ingestion beyond a reasonable doubt and are therefore not personally convinced of the appellant's guilt.

### III. CONCLUSION

The findings and sentence are set aside and the charge and its sole specification are dismissed.

For the Court



R.H. TROIDL
Clerk of Court