# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant MICHAEL J. GUINN**
**United States Army, Appellant**

ARMY 20170500

Headquarters, U.S. Army Aviation Center of Excellence
Richard J. Henry, Military Judge
Lieutenant Colonel Leslie A. Rowley, Staff Judge Advocate

For Appellant: Captain Heather M. Martin, JA; Catherine M. Cherkasky, Esquire (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Marc B. Sawyer, JA (on brief).

28 March 2019

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge: (Part I – Legal and Factual Sufficiency; Cruel and Unusual Punishment Related to Post-Trial Confinement Conditions)

Staff Sergeant (SSG) Michael J. Guinn appeals his conviction for committing a lewd act on a minor and the conditions of his confinement. For his conviction, appellant argues the evidence was not legally or factually sufficient. For his conditions of confinement, appellant argues the confinement facility's policy regarding contact with his biological children unlawfully increases his sentence to confinement. In a split opinion, we disagree.[1]

_____

[1] Appellant's other assigned error – related to an alleged improper argument – does not warrant discussion or relief. Appellant also personally submitted matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which do not warrant discussion, relief, or a post-trial evidentiary hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

A panel with enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b [UCMJ].[2]  The panel sentenced appellant to a dishonorable discharge, confinement for four years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.  Appellant's case is now before us under Article 66, UCMJ.

**BACKGROUND**

*A. The Offense*

In the summer of 2016, AC's grandmother picked AC up from her home and observed what she felt was grooming behavior by SSG MN, a family friend of AC's parents.  The grandmother told AC's mother, SC, what she had observed.  SC asked AC if she had ever been touched inappropriately.  AC responded that "[EG's] daddy had licked [AC's] privates."  Appellant is EG's father.  After hearing this, SC called MN's wife and reported AC's comment to Criminal Investigation Command (CID).  After speaking with CID, SC called SSG MN and told him that he would probably get contacted by CID.

When interviewed by CID, AC reported that the assault happened during the night she slept over at appellant's house.  This sleepover happened after a birthday party for EG's sister in 2014, when AC was six years old.  AC was sleeping on some pillows and blankets in the living room and woke up to appellant's head between her legs and licking her genitals.  She did not tell anyone until her mother asked.[3]

At trial, AC testified about the assault.  Her testimony had some inconsistent details with the testimony of her mother and appellant's wife, JG.  Both women had similar recollections of JG driving AC home the next day and going shopping at a flea market.  AC, now ten years old, remembered walking home from the Guinn residence.  In addition to details contradicted by other witnesses, AC added details that she did not report before.  At trial, AC also insisted the movie the kids watched that night was *How to Train Your Dragon II*.

The defense introduced evidence that *How to Train Your Dragon II* did not come out until six months after the birthday party.  The defense argued AC lacked credibility because of the inconsistencies in her statements.  The defense also argued that appellant was asleep before JG went to bed and never got up during the night.

---

[2] The panel acquitted appellant of one specification of rape of a child.

[3] During his CID interview, appellant gave a statement denying that he assaulted AC. He had very vague recollections of the birthday party.

## B. Conditions of Confinement

In September 2017, appellant began to serve his sentence to confinement at the Joint Regional Confinement Facility (JRCF) at Fort Leavenworth, Kansas. At the time, the JRCF policy on visitation was that inmates convicted of a child sexual offense could have no contact with any children – to include their biological children – unless they received an exception to policy.[4] However, prior to an exception to policy being considered, the inmate had to admit guilt and complete a treatment program for sexual offenders.

This policy was codified in Military Correctional Complex Standard Operating Procedure (MCC SOP) 310. For example, one section of MCC SOP 310 expressly stated:

> a. All child sex offenders desiring contact with their minor child (biological/adopted only) must request and receive approval for an exception to policy by submitting an MCC Form 510, Inmate Request Slip through the DTP to the USDB Deputy Commandant or JRCF Deputy to the Commander, as applicable, for decision. Inmates requesting contact must have <u>completed</u> Sex Offender Treatment (SOT) group.
>
> (1) If the inmate has not completed SOT group, DTP shall forward the MCC Form 510, a memo regarding completion of SOT, and the contact order to the USDB Deputy Commandant or JRCF Deputy to the Commander, as applicable, for review and decision. DTP shall provide a copy of the USDB Deputy Commandant's or JRCF Deputy to the Commander's, as applicable, decision to the inmate, informing the inmate they must complete SOT group prior to consideration for an exception to policy.

(emphasis in original).

Another section explains the policy was designed to preclude any "written, telephonic, or in-person contact with any minor child" without the necessary exception to policy. The JRCF Deputy to the Commander later clarified this restriction by ordering appellant not to have any "direct" or "indirect" contact with his children, to include "through a third party," or he would "face punitive action."

---

[4] In November 2018, the policy was amended to allow prisoner contact with children under certain conditions that appellant does not currently meet.

Appellant repeatedly requested access to his biological children through the appropriate prison request channels, to include requesting redress under Article 138, UCMJ. Appellant also raised this issue in the matters he submitted to the convening authority prior to action.

## LAW AND DISCUSSION

### A. Legal and Factual Sufficiency

We conduct a de novo review of legal and factual sufficiency. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The test for factual sufficiency "is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," the court is "convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

Appellant's argument is that the prosecution's proof fails because the inconsistencies in AC's testimony, coupled with the existence of another suspect, amounts to reasonable doubt. We are not persuaded by this argument.

First, as to whether the evidence is legally sufficient, we answer in the affirmative. The elements of sexual abuse of a child[5] as charged required the government to prove that: (1) appellant committed a lewd act upon AC by touching her vulva; (2) that AC was under 12 years of age; and (3) that appellant did so with the intent to abuse, humiliate, harass, or degrade or to arouse or gratify the sexual desire of either appellant or AC. Upon reviewing AC's testimony, we are convinced that a rational factfinder could conclude beyond a reasonable doubt that appellant touched AC's vulva and did it to arouse or gratify his sexual desire.

Second, as to the issue of factual sufficiency, we are convinced of appellant's guilt beyond a reasonable doubt. The inconsistencies in AC's testimony as compared to her initial recollection two years after the event do not make AC unbelievable. We find it significant that she immediately named "[EG's] daddy," and there is no evidence that AC had a motive to lie or implicate appellant if in fact

---

[5] In his brief, appellant argues that his conviction for rape of a child is legally and factually insufficient. On that, we would agree; in fact, so did the panel, who acquitted appellant of that offense. We address the legal and factual sufficiency of the specification of which appellant was convicted to preclude any confusion over our analysis and conclusion.

she was being inappropriately touched by someone else. While we agree that SC's response of calling Mrs. MN (and later SSG MN) was ill-advised, it does not change AC's testimony.

*B. Post-Trial Confinement Conditions*

Appellant alleges that the confinement visitation policy unlawfully increases his sentence in violation of Article 55, UCMJ, and the First, Fifth, and Eighth Amendments. We first address appellant's Article 55 and Eighth Amendment claims.

We review allegations of cruel and unusual punishment under a de novo standard. *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001). The Eighth Amendment prohibits "cruel and unusual punishments." Likewise, Article 55, UCMJ, prohibits a court-martial from adjudging or any person from inflicting "any other cruel or unusual punishment." "In our evaluation of both constitutional and statutory allegations of cruel or unusual punishment, we apply the Supreme Court's Eighth Amendment jurisprudence 'in the absence of legislative intent to create greater protections in the UCMJ.'" *United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F. 2007) (quoting *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)).

The Supreme Court has found that the Eighth Amendment prohibits more than just "physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Instead, the Eighth Amendment prohibits punishments that are "incompatible with the evolving standards of decency that mark the progress of a maturing society" or those "which involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-03 (internal quotation marks and citations omitted).

Our superior court has established a three-part test to determine whether a prisoner's claim that the conditions of confinement violate the Eighth Amendment is cognizable. *Lovett*, 63 M.J. at 215. An appellant must show: (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to appellant's health and safety; and (3) that appellant has exhausted the prisoner-grievance system and petitioned for relief under Article 138, UCMJ. *Id*.

Applying this test to the facts at hand, we conclude that the concept of "necessities" as used in the context of the Eighth Amendment does not extend to contact with minors. Courts have traditionally found the failure to provide food, sufficient housing, and prevent torture to be denials of necessities. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678 (1978); *Rhodes v. Chapman*, 452 U.S. 337 (1981). In certain circumstances, the "deliberate indifference to serious medical needs" has also been found to violate the Eighth Amendment. *White*, 54 M.J. at 474 (quoting

5

*Estelle*, 429 U.S. at 104-05); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (Prison officials must have a "sufficiently culpable state of mind," which is one of "deliberate indifference" to inmate health).[6]

In contrast, courts have found that solitary confinement, even long term solitary confinement, does not violate the Eighth Amendment. *See United States v. Avila*, 53 M.J. 99 (C.A.A.F. 2000). If the general denial of human contact is not a deprivation of life's necessities, we do not believe that the deprivation of contact with one's biological children constitutes a deprivation of a necessity. Our sister court has similarly concluded that an appellant's inability to have contact with minor family members while incarcerated for a sexual offense against children is not a violation of the Eighth Amendment. *See United States v. Green*, ACM 36664, 2007 CCA LEXIS 475, at *2-6 (A.F. Ct. Crim. App. 12 Oct. 2007); *see also United States v. Felicies*, NMCCA 9900206, 2005 CCA LEXIS 124, at *29-35 (N-M. Ct. Crim. App. 27 Apr. 2005) (rejecting a number of Eighth Amendment and Article 55 claims related to post-trial confinement conditions).

In addition to failing the first prong of the analysis, we also find that appellant has not shown a culpable state of mind on the part of prison officials. There is no punitive intent in the application of the policy. While one may question the policy as overly broad, the prison officials clearly believe it has a legitimate underlying purpose. By enforcing the policy, prison officials did not show deliberate indifference to appellant's health and safety.[7]

While we do not need to look to the third prong of the test, as appellant cannot meet either of the first two prongs, we note that appellant has clearly exhausted his administrative remedies. He initially raised the issue to the convening authority prior to action and has subsequently and consistently exercised his rights within the prison grievance system.

Senior Judge MULLIGAN and Judge FEBBO concur in Part I.

---

[6] In *White*, our superior court discussed *Farmer*, explaining how it "defined two factors that are necessary for an Eighth Amendment claim to succeed regarding conditions of confinement." 54 M.J. at 474. The first factor is an "objective component," in which the act or omission must be "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834) (citations omitted). The second factor, as outlined above, "is subjective, testing for a culpable state of mind." *Id*.

[7] This analysis is based on the good faith belief that prison officials had regarding the legitimacy of the policy during the time between appellant's incarceration and his affidavit. Should the prison officials understanding of the legitimacy of the policy change, likewise this analysis would change.

MULLIGAN, Senior Judge: (Part II – First Amendment and Fifth Amendment Claims Related to Post-Trial Confinement Conditions)

For many of the reasons outlined by the majority opinion and concurring opinion in *Jessie*, appellant's First and Fifth Amendment claims – related to child visitation prior to completion of child sex offender treatment – remain "unsuitable for an [Article 66] sentence appropriateness assessment." *United States v. Jessie*, ARMY 20160187, 2018 CCA LEXIS 609, at *13 (Army Ct. Crim. App. 28 Dec. 2018) (mem. op.). For example, as in *Jessie*, there is another court that is better positioned to address appellant's complaints:

> [T]o the extent that appellant's claims are meritorious, there exists a court that has the authority to order actual (i.e., injunctive) relief. The Tenth Circuit has determined that military prisoners at Fort Leavenworth may file suit in U.S. District Court seeking injunctive and declaratory relief for oppressive prison conditions. *See Walden v. Bartlett*, 840 F.2d 771, 774-75 (10th Cir. 1988) (finding such requests are not specifically barred by *Feres v. United States*, 340 U.S. 135 (1950)). And the ability to grant injunctive and declaratory relief are not the only benefits. Our jurisdiction over this case exists only during the snapshot in time between when the convening authority acts and when we issue our judgment. A U.S. District Court is not so constrained.

2018 CCA LEXIS 609, at *18-19.

Simply put, these are claims that "we are poorly positioned to consider, and that within the structure of the military justice system [are] better entrusted to a determination by persons other than this Article I court." *Id*. at *16. As such, we decline to address appellant's First and Fifth Amendment claims.[8]

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Judge FEBBO concurs in Part II.

---

[8] As in *Jessie*, we note that our "decision today is case specific, and should not be understood as prohibiting or disincentivizing similar (or dissimilar) requests." *Id*. at *19.

SCHASBERGER, Judge dissenting from Part II:

As in *Jessie*, I respectfully dissent.[9]

Our mandate under Article 66, UCMJ, is to affirm only "the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." We can only fulfill this mandate by analyzing potential violations of an appellant's constitutional rights related to post-trial confinement conditions. This is especially true when we are already analyzing a *different* constitutional right related to the same conditions.

I see no viable reason why we should consider appellant's Eighth Amendment and Article 55 claim, but then decline to consider his First and Fifth Amendment claims. I also find this distinction runs contrary to the language of *White*, in which the concurring judge stated the opinion "squarely held" that "the lower courts have *the duty* . . . to review whether the sentence imposed by a court-martial is being unlawfully increased by prison officials." *United States v. White*, 54 M.J. 469, 475 (C.A.A.F. 2001) (Sullivan, J., concurring) (emphasis added).

Furthermore, unlike *Jessie*, appellant *did* raise this issue to the convening authority. As such, I find it is even more important and appropriate for us to consider this issue as part of our Article 66 review. *See, e.g.*, *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) ("What constitutes the 'entire record' for review of sentence appropriateness has been understood to include not only evidence admitted at trial, but also the matters considered by the convening authority in his action on the sentence." (citations omitted)).

In sum, and as outlined by my dissent in *Jessie*, I would find that appellant's First Amendment rights were violated, but I would not find any violation of his Fifth Amendment rights. 2018 CCA LEXIS 609, at *25-34 (Schasberger, J. dissenting). I would then consider whether this violation changed appellant's sentence from one that is appropriate to one that is inappropriately severe.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[9] *See United States v. Jessie*, ARMY 20160187, 2018 CCA LEXIS 609, at *25-38 (Army Ct. Crim. App. 28 Dec. 2018) (mem. op.) (Schasberger, J. dissenting).