# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA[1], SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 NICHOLAS E. DAVIS**
**United States Army, Appellant**

ARMY 20160069

Headquarters, U.S. Army Medical Department Center and School
Wade Faulkner, Military Judge
Lieutenant Colonel Toshene C. Fletcher, Staff Judge Advocate

For Appellant: Captain Bryan A. Osterhage, JA (argued); Lieutenant Colonel Tiffany M. Chapman, JA; Lieutenant Colonel Christopher D. Carrier, JA; Captain Bryan A. Osterhage, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Captain Bryan A. Osterhage, JA (on reply brief); Major Todd W. Simpson, JA; Captain Bryan A. Osterhage (on supplemental brief).

For Appellee: Captain Jeremy Watford, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA (on brief).

16 August 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

In this appeal, we find the military judge properly denied the defense motion to suppress some of appellant's statements to Criminal Investigation Command (CID) agents and the search of his cell phone. We affirm appellant's conviction of making an indecent visual recording of another soldier's private area when that soldier possessed a reasonable expectation of privacy at the time of its recording. We find appellant's conviction of broadcasting an indecent recording is factually and legally insufficient.

---

[1] Senior Judge Campanella decided this case prior to her departure from the Court.

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of false official statement, one specification of indecent recording, and one specification of broadcasting an indecent recording in violation of Articles 107 and 120c, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920c (2012) [UCMJ]. The military judge convicted appellant, pursuant to his pleas, of two specifications of violating a lawful general order in violation of Article 92, UCMJ. The convening authority approved the adjudged sentence of a bad conduct discharge and a reduction to the grade of E-1. Appellant was credited with fifteen days of confinement against the sentence to confinement.

This case is before us for review pursuant to Article 66, UCMJ. We address two assignments of error, with multiple subparts, one of which merits relief. Appellant personally raised seven matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), one of which is also an assigned error. The remaining *Grostefon* matters, after due consideration, do not warrant discussion or relief.

## BACKGROUND

*Events Regarding Appellant's Crimes*

Appellant's offenses occurred the day after Thanksgiving when mostly underage soldiers consumed alcohol and engaged in sexual activity in a cheap off-post motel room. Appellant, Private (PV2) JE, and several other soldiers rented the motel room to surreptitiously consume alcohol. Appellant purchased alcohol for all the soldiers. After consuming various amounts of alcohol, most of the soldiers left the motel room except for appellant, PV2 JE, PV2 JH, and PV2 JS.

The location of these four remaining soldiers within the room and the room's location and layout is key to understanding this case. The room was located on the first floor with a window facing towards, and a door opening to, the motel's parking lot. Upon opening the door, there was a bedroom containing two beds and a separate bathroom beyond. Private JS, due to immense alcohol consumption, passed out on the bed closest to the window. Appellant, PV2 JE, and PV2 JH engaged in a variety of sexual activities with one another on the other bed closest to the bathroom. Private JE asserted the sexual activities were nonconsensual and appellant asserted the activities were consensual. While on the bed and without PV2 JE's knowledge or consent, appellant used his cell phone to record PV2 JE's buttocks as she was bent over and faced forward while engaging in sexual intercourse with him.

A few minutes after appellant made the recording, several soldiers from the group returned to the motel room and knocked on the door. When no one answered the locked door, one of the soldiers walked over to the window, looked in, and saw

2

PV2 JE jump off the far bed and run into the bathroom. Appellant then opened the door to let the group into the room. Before leaving the room, appellant showed a fellow soldier the cell phone recording he made of PV2 JE's buttocks.

*Appellant's CID Interview*

A few days later, appellant was interviewed by CID agents for the alleged rape, among other offenses, of PV2 JE. Appellant made several incriminating statements. At the end of the interview, appellant consented to the seizure and search of his cell phone which contained his video recording of PV2 JE. Appellant deleted the video recording he made of PV2 JE, but the CID digital forensic examiner was able to extract the deleted video from appellant's cell phone.

At trial, defense counsel filed a motion to suppress appellant's statements to CID and challenged the validity of his consent to seize and search his cellphone because: (1) appellant invoked his right to counsel; and (2) his entire statement was involuntary. The military judge granted the motion, in part, and denied the motion, in part, as discussed in-depth below.

In order to review the military judge's ruling, we divide the CID interview into four key areas: (1) initial waiver; (2) invocation of rights; (3) re-initiation of communication; and (4) re-waiver of rights.

*Initial Waiver*

At the time of the interview, appellant was twenty-five years old, had a General Technical (GT) score of 124, and was receiving training to be a combat medic specialist. The military judge found "[appellant] maintained eye contact; could recollect facts, had no difficulty speaking, had no slurred speech, had no difficulty walking, and had no difficulty sitting. The [appellant] did not appear to be under the influence of any substance that would impair his ability to knowingly waive his rights."

Prior to any questioning by CID agents, appellant was advised orally and in writing of his Article 31(b), UCMJ, and *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant verbally affirmed he understood his rights and waived his rights. Appellant placed his initials by each right and signed Department of Army Form 3881-E (DA Form 3881), the rights' waiver procedure/waiver certificate, purportedly indicating he understood and waived his rights.

The CID agent verbally advised appellant he was suspected of "having knowledge," as opposed to "having committed," a rape. Appellant's DA Form 3881, however, stated appellant was suspected of committing the offense of rape. This

initial discrepancy between the CID agent's oral advisement and the written form was later clarified by appellant during the interview and is discussed below.

After obtaining appellant's waiver of rights, a CID agent commenced questioning appellant. After a few minutes of questions, appellant asked the agent whether an attorney could be made available that night. The agent replied it would not be possible that night but it could be scheduled at a later time. Appellant did not ask to reschedule the interview but instead stated he wanted to get the interview done that night.

### Invocation of Rights

Shortly after expressing his desire to continue the interview, appellant sought to clarify the discrepancy between whether he was suspected of "having knowledge" or "having committed" a rape. Appellant stated if an accusation existed that he committed a rape, the situation was "pretty serious." After noting the severity of the situation, appellant stated "I would like to have a lawyer present … if I'm under investigation for [committing] rape." The military judge ruled this statement was an unambiguous invocation of appellant's right to counsel.

### Re-Initiation of Communication

Immediately after appellant's request for counsel, he sua sponte continued talking to the CID agent, providing an approximate nine-minute monologue on his exculpatory version of the events regarding the alleged offenses. During this monologue, the agent did not ask appellant any questions or re-advise appellant of his rights. The agent testified he did not stop the interview because appellant continued to discuss the incident and "continued for an extensive period of time." The military judge denied the defense motion to suppress any statements during appellant's monologue, concluding they were voluntarily, spontaneously initiated by appellant, and not in response to any questions from the CID agent.

After appellant's lengthy monologue, the agent began re-questioning appellant without re-advising him of his rights. This re-questioning period continued for approximately fifty minutes. The military judge held appellant's statements within this fifty-minute window were not admissible because they were taken in violation of his right to counsel as a valid re-waiver of his rights had not occurred.

### Re-Waiver of Rights

Approximately fifty minutes into the re-questioning period, appellant asked the agent about taking a polygraph examination. The agent told appellant that a polygraph examination could not occur that night, but it could be scheduled for later. Appellant then immediately stated "I would like to request a lawyer after this point."

The agent then asked appellant if he was requesting a lawyer right at that moment. Appellant responded he was not requesting a lawyer at this time.

The military judge held appellant's statement was an affirmative re-waiver of his right to counsel and denied the defense motion to suppress any of appellant's statements after this re-waiver. While this re-waiver occurred almost an hour after appellant's spontaneous re-initiation of communication and fifty minutes after the agent began re-questioning appellant, the military judge reasoned appellant's immediate re-initiation of the interview (the nine-minute monologue) authorized the agent to obtain a subsequent re-waiver of appellant' rights.

After this re-waiver, the interview continued with appellant stating "nothing I did is incriminating and I want my part of the story heard." Despite this assertion, appellant eventually made some incriminating statements in response to CID questioning, including an admission that he recorded PV2 JE's buttocks without her consent.

Appellant also consented to the seizure and search of his cell phone which he used to video PV2 JE. The military judge denied the defense motion to suppress the seizure and search of the cell phone on the grounds that appellant's consent occurred after his re-initiation and re-waiver of rights.

## LAW AND DISCUSSION

*Suppression of Statements*

On appeal, appellant asserts the military judge abused his discretion by not suppressing all of appellant's statements to CID. Appellant essentially offers the same reasons supporting suppression as he did at trial. First, appellant unambiguously invoked his right to counsel and the CID agent failed to immediately terminate the interview. Second, appellant's statements were involuntary.

We review a military judge's ruling on a motion to suppress for an abuse of discretion. *United States v. Baker*, 70 M.J. 283, at 287 (C.A.A.F. 2011). An abuse of discretion occurs "when: (1) the findings of fact upon which [the military judge] predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010); Military Rule of Evidence [Mil. R. Evid.] 304; 305. We review the military judge's conclusions of law *de novo*, including his conclusion as to the voluntariness of the statement. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009).

We find the military judge did not abuse his discretion by concluding appellant made an unambiguous invocation of his right to counsel after initially waiving his rights. An attorney was not made available to appellant after his

invocation of his right to counsel. Under these facts, two issues must be considered to determine if the military judge abused his discretion by not suppressing all of appellant's statements: (1) whether appellant re-initiated communication with the CID agent; and (2) whether appellant subsequently re-waived his right to counsel.

*Appellant's Statements Made After Re-Initiation*

As to re-initiation, the Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, 485 (1981), created a bright-line rule barring police from interrogating an accused in custody once he clearly asserts his right to counsel, unless an attorney is provided, or "the accused himself initiates further communication, exchanges, or conversations with the police." Military Rule of Evidence 305(e)(3)(A) prohibits re-questioning an accused, who is subject to "custodial interrogation," after he invokes his right to counsel unless the accused re-initiates communication and provides a subsequent waiver.[2]

The military judge did not determine whether appellant was subject to "custodial interrogation," but the distinction between custodial and non-custodial interrogation in the military context appears irrelevant. Our superior court extends counsel rights and the *Edwards* re-initiation and re-waiver requirements to accused who are only subjected to mere non-custodial interrogation.

The Court of Criminal Appeals (CAAF) has stated "[c]onsistent with our precedents, we note that in the military system the accused's right to counsel - - and the requirement of knowing and voluntary waiver - - are not limited to custodial interrogations." *United States v. Mott*, 72 M.J. 319, 330 n. 10 (C.A.A.F. 2013) (citing *United States v. Delarosa*, 67 M.J. 318, 320 (C.A.A.F. 2009)) ("Military officials and civilians acting on their behalf are required to provide rights warnings prior to interrogating a member of the armed forces if that servicemember is a suspect irrespective of custody."). Even with the explicit words in Mil. R. Evid. 305(e)(3)(A) requiring "custodial interrogation," and the absence of the military judge's finding of fact on this issue, we nevertheless apply CAAF's precedent and first review, under *Edwards*, whether "[appellant] himself initiate[d] further communication, exchanges, or conversations" with the agents. *Edwards*, 451 U.S. at 484-85.

We find the military judge did not err in finding appellant sua sponte re-initiated communication with a CID agent immediately after he invoked his right to counsel with no coaxing from the agent. Appellant engaged in a nine-minute

---

[2] "'Custodial interrogation' means questioning that takes place while the accused . . . is in custody, could reasonably believe himself or herself to be in custody, or is otherwise deprived of his or her freedom of action in any significant way." *See* Mil. R. Evid. 305(b)(3).

monologue asserting his exculpatory version of events. The agent did not ask questions during this time period. The agent also testified he did not stop the interview because appellant continued to discuss the incident and "continued for an extensive period of time." Accordingly, we hold the military judge did not abuse his discretion by denying defense's motion to suppress appellant's statement made during his lengthy monologue.

*Appellant's Statement Made after Re-Waiver*

After determining appellant re-initiated communication, the question next turns to whether appellant subsequently provided a knowing, intelligent, and voluntarily re-waiver of his rights under a "totality of the circumstances." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983) (stating that once it has been determined that an accused re-initiated dialogue with law enforcement there is also a separate inquiry into the voluntariness of the re-waiver).

Appellant asserts his re-waiver was not knowing, intelligent, and voluntary because the agent failed to re-advise him of his rights, and therefore, any statement elicited by CID after his alleged re-waiver must be suppressed. Although a rights re-advisement is a very important factor to consider under a "totality of the circumstances," we decline to adopt a per se rule, as suggested by appellant, that a failure to re-advise an accused of his rights automatically equates to an unknowing, unintelligent, and involuntary re-waiver. *See United States v. LeMasters,* 39 M.J. 490, 491 (C.M.A. 1994) (holding an accused's acknowledgement that he could consult with counsel, without a re-advisement of rights, sufficed to establish a knowing waiver). We also decline to per se invalidate the legality of appellant's re-waiver because it occurred fifty minutes after appellant's re-initiation of communication and lengthy monologue when, we repeat, this is one of many factors which must be weighed in reviewing the totality of the circumstances. Any per se and pro forma rule would eviscerate a totality of the circumstances review.

After thoroughly reviewing the totality of appellant's circumstances, we hold the military judge did not abuse his discretion finding appellant knowingly, intelligently, and voluntarily re-waived his rights when appellant stated that he was not requesting a lawyer at this time. Appellant was twenty-five years old and possessed a GT score of 124. Nothing in the military judge's findings of fact, or our separate review, indicate any type of coercion during the re-waiver process or the entire interview.

After closely reviewing the entire video recording of appellant's interview, this court finds appellant was extremely articulate and clearly understood his rights. The overall theme of the entire interview was appellant's desire to immediately speak with CID because, as stated by appellant, "I want my part of the story heard." *See Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (stating "the admissibility of

statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'").  Appellant did not want to "cut off questioning" from CID agents but instead wanted to fully and immediately discuss the alleged offenses to clear his name.

Appellant re-initiated communication on his own volition and was not badgered by CID agents into re-waiving his rights.  Appellant understood he had the right to counsel, he elected not to wait to consult with counsel, and he continuously exhibited a strong desire to talk to the CID agents.  The military judge did not abuse his discretion by denying the motion to suppress appellant's statements that occurred after his re-initiation of communication and his affirmative re-waiver of counsel rights.[3]

Appellant's affirmative re-waiver, when combined with the other factors discussed above, served to establish a knowing, intelligent, and voluntary re-waiver of his rights.  We find our holding consistent with the overall purpose of the *Edwards* rule which seeks to "prevent police from badgering a defendant into waiving his previously asserted" request for counsel.  *See Minick v. Mississippi*, 498 U.S. 146, 150 (1990).[4]  Once appellant's re-initiation merged with a valid non-coerced re-waiver, the judicially created prophylactic reasons, derived from *Edwards,* to suppress appellant's statements no longer existed.

We pause now, however, to reinforce the general principle that CID agents should re-advise an accused of his rights before re-questioning an accused who:  (1) invokes his right to counsel after initially waiving such right; and (2) re-initiates communication after that invocation.  This opinion should not be read to embolden CID agents, or anyone else, to do otherwise.  Our affirmance of the military judge's ruling in this case is limited to the very narrow set of presented facts.

*Voluntariness of Appellant's Entire Statement*

At trial, defense counsel asserted appellant's statements were involuntary because he was:  (1) initially handcuffed enroute to the CID office; (2) prescribed certain medications; and (3) sleepy due to his medication usage and having been

---

[3]  Likewise, we find the military judge did not abuse his discretion in suppressing appellant's statements within the approximate fifty minute window occurring between the end of his monologue and his affirmative re-waiver of counsel.

[4] The *Edwards* rule "should be counterbalanced against the 'unmitigated good' on the part of law enforcement to secure 'uncoerced confessions.'"  *See United States v. Maza*, 73 M.J. 507, 525 (N. M. Ct. Crim. App. 2014) (*citing McNeil v. Wisconsin*, 501 U.S. 171, 181 (1991)).

awake for the previous sixteen hours. An inquiry into voluntariness assesses "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Bubonics*, 45 M.J. 93 (C.A.A.F. 1996). We review the military judge's conclusions of law *de novo*, including his conclusion as to the voluntariness of the statement. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009). We find appellant's statements were voluntary based on the totality of the circumstances.

Appellant was not handcuffed during any part of the interview. Appellant's freedom of movement was not constrained in any manner. Appellant even did calisthenics during one break in the interview.

As to appellant's prescription for trazodone and tramadol, the record does not establish he took either medication prior to or during his interview or that these medications had any bearing on his physical or cognitive functioning during his interview. Appellant was wide-awake and extremely articulate.

As to appellant being sleepy due to his alleged medication usage or having been awake for the previous sixteen hours, we adopt the military judge's detailed findings of fact. The military judge found "[appellant] maintained eye contact; could recollect facts, had no difficulty speaking, had no slurred speech, had no difficulty walking, and had no difficulty sitting. The [appellant] did not appear to be under the influence of any substance that would impair his ability to knowingly waive his rights."

We highlight the following additional facts supporting the voluntariness of appellant's statements. Again, at the time of the interview, appellant was twenty-five years old, had a GT score of 124, and was receiving training to be a combat medic specialist. Appellant felt sufficiently comfortable to sua sponte ask the CID agent if he could take off his Army Combat Uniform shirt because he was hot. Appellant's request was immediately granted. Appellant was so assertive he corrected the CID agent throughout the interview by adamantly denying he engaged in a "double penetration" of PV2 JE's body with another solider despite the agent's assertion to the contrary. The agents made no promises to or threats against appellant.

*Suppression of Cell Phone*

Appellant asserts the military judge abused his discretion by not suppressing the contents of appellant's cell phone because: (1) his consent to its seizure and search was involuntary; and (2) he consented to the search during an unlawful interrogation. We disagree.

Having already determined appellant's acts were voluntary during the entire interview, we further note that appellant failed to raise the issue of voluntariness at trial as it relates to his consent to seize and search his cell phone. Appellant's trial defense counsel also did not object to the contents of the cell phone being admitted into evidence.

Whether an appellant has waived an issue is a question of law we review *de novo*. *See United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005). Military Rules of Evidence 311(d)(1) and (2) require the trial defense counsel to make a motion to suppress evidence seized from the accused prior to submission of plea, or at a later time as permitted by the military judge for good cause. R.C.M. 905(e). Appellant's failure to raise the issue of voluntariness in his motion to the military judge and at trial constitutes waiver of his right to object to this Court regarding the admission of the contents of his cell phone. Accordingly, appellant's claim that his consent to search his cell phone was involuntary is waived, leaving no error to correct on appeal. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017).

As to appellant's second argument, even if we agreed with appellant that his consent occurred during an unlawful interrogation, which we do not, a request for a consent to seize and search does not impinge upon Article 31(b) or Fifth Amendment rights because such requests are not interrogations and the consent given is ordinarily not a statement. *See United States v. Robinson*, 77 M.J. 303 (C.A.A.F. 2018). "Requesting consent to search property in which a suspect has an interest is not prohibited by his prior request for counsel, because *Edwards* provides protection only as to interrogation." *United States v. Burns*, 33 M.J. 316, 320 (C.M.A. 1991).

*Factual and Legal Sufficiency of the Cell Phone Offenses*

Appellant argues his conviction for the offenses of making and broadcasting a visual recording is factually and legally insufficient because PV2 JE did not have a reasonable expectation of privacy when the recording was made and the manner in which appellant displayed the video to another soldier does not meet the definition of "broadcasting" in Article 120c, UCMJ.

We review claims of legal and factual insufficiency *de novo*, examining all of the evidence properly admitted at trial. Art. 66(c), UCMJ; *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The test for factual sufficiency is whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

10

Within the context of this case, the government was required to prove beyond a reasonable doubt that appellant knew or reasonably should have known the recording was made without PV2 JE's consent, under circumstances in which PV2 JE had a reasonable expectation of privacy, and that he knowingly broadcasted the recording to another. Article 120c, Uniform Code of Military Justice, 10 U.S.C. § 920c (2012).

*Reasonable Expectation of Privacy*

"Reasonable expectation of privacy," for the purposes of the charged offense, is defined as "[c]ircumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the person was being captured." 10 U.S.C. § 920c(d)(3). "Private area" includes a person's buttocks. 10 U.S.C. § 920c(d)(2). "By enacting this provision of the UCMJ, Congress recognized an expectation of privacy in a person's body consistent with what has historically been recognized through widely accepted social norms." *United States v. Raines*, 2014 CCA LEXIS 600, *12-13 (N.M. Ct. Crim. App. 2014).

Here, appellant recorded PV2 JE, who was bent over and facing forward, while he was directly behind her attempting to penetrate her vagina. Appellant asserts PV2 JE, who had neither knowledge of the cell phone's presence nor consented to the making of the recording, did not have a reasonable expectation of privacy because it was daylight, two other people were in the room, and the room was located on the first floor with a window looking out into the parking lot. Appellant further argues a passerby in the parking lot could have seen PV2 JE engaging in sexual activities with appellant, rendering the sexual act "open and notorious," and thus no reasonable expectation of privacy could exist.

In *Raines*, our sister service court explored the boundaries of a person's "reasonable expectation of privacy." *Raines*, 2014 CCA LEXIS at *3. In *Raines,* appellant video recorded his sexual encounters with four different women. *Id.* Although the sexual encounters were consensual, the women did not consent or know about the recording. *Id.* Raines argued the women should have noticed the camera and, that by agreeing to have sex with him, they implicitly agreed to the recording. *Id.* at *13. The Navy-Marine Corps Court of Criminal Appeals held such arguments were "[. . .] patently ridiculous; agreeing to have sex with another does not remove all reasonable expectations of privacy." *Id.*; *see also United States v. Vega*, 2014 CCA LEXIS 929, *9-10 (N.M. Ct. Crim. App. 2014).

Likewise, PV2 JE did not consent to the surreptitious recording and did not lose her reasonable expectation of privacy when she engaged in sexual activity with

two individuals in the presence of a third unaware person.[5]  As to a possible passerby scenario, the door to the motel room was closed and locked and the scene of the sexual activity was across the room and away from the window.  Private JE's buttocks were recorded by appellant, who was in direct physical contact with her from behind while trying to engage in sexual intercourse, from a very short distance.  It was not the same image that could have been captured from a distance, across the motel room, and through a window.

The facts of this case fit squarely within the statute's definition of "reasonable expectation of privacy."  10 U.S.C. § 920c(d)(3).  Private JE had a reasonable belief that her "private area," her buttocks, would not be captured because appellant never mentioned recording their sexual act.  She did not consent to such recording and no cameras were visible to her while engaging in sex with appellant.  10 U.S.C. § 920c(d)(3).  We conclude PV2 JE had a reasonable expectation of privacy that her buttocks would not be recorded by appellant, her sexual partner, while engaging in sexual intercourse behind a locked door in a motel room.

*"Broadcasting" the Recording*

The term "broadcast" is defined as "to electronically transmit a visual image with the intent that it be viewed by a person or persons."  10 U.S.C. § 920c(d)(4).  The phrase "electronically transmit" is not further defined in the statute.  Appellant asserts the mere act of playing the video recording of PV2 JE on his cell phone in front of one other physically present soldier does not constitute "broadcasting" under 10 U.S.C. § 920c(a)(3).  We agree.

In deciding whether appellant's conduct constituted a "broadcast," we first must attempt to discern if a plain meaning of "electronically transmit" exists.  *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015).  If no plain meaning exists and the language is ambiguous, we next consider the ambiguous word in the context of the entire statute.  *Id.*  We also may review the legislative history and attempt to discern the intent of lawmakers in enacting the statute.

In the absence of explicit language showing a contrary congressional intent, we must give words in statutes their usual meaning.  *See Barber v. Gonzales*, 347 U.S. 637, 643 (1954).  In the absence of a statutory definition, we look to whether the language has a plain and unambiguous meaning.  *United States v. Williams*, 75 M.J. 663 (Army Ct. Crim. App. 2016).  The plain language of a statute will control

---

[5]  Private JE asserted the sexual intercourse with appellant was non-consensual.  Appellant asserted the sexual intercourse was consensual.  We need not determine, however, whether the sexual intercourse was consensual or nonconsensual because, even if we were to determine the sexual activity was consensual, PV2 JE did not lose her reasonable expectation as to being video recorded.

unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007).

The pertinent definition of "electronic" is "utilizing devices constructed or working by the methods or principles of electronics." Webster's Third New International Dictionary 280 (1981). *See also Trump v. Hawaii*, 138 S.Ct. 2392, 2410-11 (June 26, 2018) (approving the use of the Webster's Third International Dictionary to discern a statute's textual plain meaning). The most relevant definition of "transmit" is "to send out a signal either by radio waves or over a wire line." Webster's Third New International Dictionary 280 (1981). The combination of these two definitions appears to require an electronic device to send the transmission and an electronic device to receive the transmission.[6] In this case, there is only one electronic device – appellant's cell phone.

We also further considered the words, "electronically transmit" within the context of the entire statute. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Article 120c(a)(3), UCMJ prohibits two acts: "broadcasting" or "distributing."

"Distribute" is defined as "delivering to the actual or constructive possession of another, including transmission by electronic means." 10 U.S.C. § 920c(d)(5). The definition of distribution allows for a physical or an electronic transference whereas the definition of broadcast is limited to only an electronic transference. We find it persuasive that Congress intentionally included two modes of transference for a distribution and only delineated one mode of transference for a broadcast. Based on our analysis of "broadcast" within the context of the statute, we conclude there is no basis for finding that Congress intended the definition of "broadcast" to include the mere physical act of displaying a video to one other physically present soldier.

Although 10 U.S.C. section 920c was not enacted until 2012, we note that Congress enacted a similar statute, 18 U.S.C. section 1801, in 2004 which was given the short title, "Video Voyeurism Prevention Act of 2004." Notably, 18 U.S.C. section 1801 defines the term "broadcast" to mean "electronically transmit[ing] a visual image with the intent that it be viewed by a person or persons." 18 U.S.C. § 1801(b)(2). We now turn to the legislative intent of this similar statute for additional guidance to discern Congress' intent in enacting 10 U.S.C. section 920c.

---

[6] Although "broadcast" is defined by the statute, we note that "broadcast" generally means "the act of sending out sound or images by radio or television transmission, especially for general transmission." Webster's Third New International Dictionary 280 (1981). This general meaning of broadcast appears to also require an electronic device to send the transmission and an electronic device to receive the transmission.

13

In the House Report for 18 U.S.C. section 1801, Congress stated the background and need for this legislation was the "development of small, concealed cameras and cell phones, along with the instantaneous distribution capabilities of the Internet, have combined to create a threat to the privacy […]." H.R. Rep. No, 108-504, at 3 (2004). Congress expressed a concern for a compounded violation of privacy when an image of an individual's private area is captured without his or her consent and then "[…] pictures or photographs find their way to the internet." *Id*. Congress' legislative intent in enacting 18 U.S.C. section 1801 appears to be aimed at combating the spread and showing of non-consensual photos of an individual's private area on the internet. The House Report does not mention a concern for a scenario, like in this case, where an indecent video is displayed, but never actually electronically or physically transferred to the possession of the other physically present person.

Appellant did not send the video to another person by any means. Appellant displayed the video recording on his cell phone to another soldier who was physically present. Under the facts of this case, we find appellant's act is not encompassed within the definition of "electronically transmit;" he did not "broadcast" the recording to the other soldier. As such, we take corrective action in our decretal paragraph below.[7]

**CONCLUSION**

On consideration of the entire record, the finding of guilty of Specification 2 of Charge IV, broadcasting an indecent recording in violation of Article 120c(a)(3), UCMJ, is SET ASIDE and that Specification is DISMISSED. The remaining findings of guilty are AFFIRMED.

We reassess the sentence in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). We are confident the panel would have adjudged a sentence at least as severe as the approved sentence absent the error. While the conviction of Specification 2 of Charge IV increased appellant's maximum punishment that may be imposed by seven years of confinement, appellant was not sentenced to any confinement. Appellant was sentenced to a bad-conduct discharge and reduction to the grade of E-1. In light of the sentence received and the gravamen of the remaining offenses of which appellant was convicted, we AFFIRM the approved

---

[7] We note the rule of lenity would require a reversal of the conviction if an otherwise ambiguous criminal statute still existed. *See Bifulco v. United States*, 447 U.S. 381 (1980); *Huddleston v. United States*, 415 U.S. 814, 831-32 (1974) (holding the rule of lenity provides that a criminal statute should be read in favor of a defendant when the statute is sufficiently ambiguous and it cannot be said exactly what conduct is prohibited).

sentence. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered to be restored. *See* UCMJ art. 58b(c) and 75(a).

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court