# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40434

————————————

### UNITED STATES
*Appellee*

**v.**

### Zachary R. BRAUM
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 October 2024[1]

————————————

*Military Judge*: Mark F. Rosenow (pretrial); Shad R. Kidd (trial).

*Sentence*: Sentence adjudged 28 October 2022 by GCM convened at McConnell Air Force Base, Kansas. Sentence entered by military judge on 6 December 2022: Dismissal, confinement for 9 years, forfeiture of all pay and allowances, and a reprimand.

*For Appellant*: Scott R. Hockenberry, Esquire (argued); Major Jenna M. Arroyo, USAF; Captain Samantha M. Castanien, USAF; Brian A. Pristera, Esquire.

*For Appellee*: Major Jocelyn Q. Wright, USAF (argued); Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge DOUGLAS joined.

————————————

---

[1] The court heard oral argument in this case on 2 July 2024.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MASON, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of three specifications of rape, three specifications of sexual assault, and one specification of abusive sexual contact; three specifications of domestic violence; and one specification of reckless operation of an aircraft, in violation of Articles 120, 128, and 113, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 913.[2,3] The military judge sentenced Appellant to a dismissal, confinement for nine years, forfeiture of all pay and allowances, and a reprimand. Appellant requested deferment of the automatic forfeitures for a period of four months. The convening authority denied Appellant's deferment request and took no action on the findings or sentence.

Appellant raises nine issues on appeal which we have reworded and reordered: (1) whether the military judge erred by denying a defense motion to compel disclosure of contents of BE's phone or dismiss all charges and specifications with prejudice; (2) whether Appellant's convictions are factually sufficient; (3) whether it was plain error for trial counsel to ask a witness whether the witness felt the victim had misled her about a collateral matter after the victim was cross-examined and denied lying about the collateral matter; (4) whether the military judge's instructions regarding prior inconsistent statements were erroneous; (5) whether trial defense counsel were ineffective when they failed to recognize the proper uses of prior statements; (6) whether Appellant's conviction for rape in Specification 1 of Charge I is ambiguous; (7) whether trial counsel's findings argument amounted to prosecutorial misconduct; (8) whether Appellant's sentence that includes consecutive confinement terms is unlawful; and (9) whether Appellant was denied his right to a unanimous verdict.[4] Additionally, we consider another issue, (10) whether Appellant is entitled to relief for delays in post-trial processing in accordance with *United*

———————————

[2] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence (Mil. R. Evid.), and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was acquitted of two specifications of sexual assault and two specifications of domestic violence. The language "on divers occasions" was excepted by the military judge pursuant to R.C.M. 917 for one of the sexual assault convictions. The members found Appellant guilty by excepting the language "on divers occasions" for one of the domestic violence convictions.

[4] Appellant raises issue (9) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), or in the alternative, *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

We have carefully considered Appellant's allegations of error as to issues (3), (5), and (9) above and find they do not require discussion or relief. *See United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987). Regarding issue (4), we find that Appellant waived this issue. *United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020). As to the remaining issues, we find no error materially prejudicial to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND[5]

Appellant met a woman, BE, around Thanksgiving 2019 through an online dating application. They began dating and their relationship quickly progressed. BE described the early stages of their sexual relationship as "sweet and romantic."

In mid-April 2020, Appellant was piloting a small aircraft with BE seated next to him as a passenger. Appellant wanted to join the "Mile High Club," which was described as an informal group of individuals who have engaged in sexual intercourse while flying. During one flight, the two engaged in sexual intercourse.[6] Later, Appellant bragged about finally joining the Mile High Club and presented BE with a Mile High Club pin. On a subsequent occasion, Appellant forced his penis to penetrate BE's mouth while the two were on the small aircraft. BE attempted to resist but eventually stopped because she felt that there was a danger of crashing the airplane. In his flight logbook, Appellant used stars to mark the dates and times when he and BE engaged in sexual acts while flying. BE identified those entries during her testimony.

On 16 May 2020, Appellant and BE were at a friend's house, visiting and drinking alcohol. Appellant asked BE if she would be willing to "spice up [their] life in the bedroom." Later that evening, while they were at Appellant's house, Appellant engaged in sexual intercourse with BE. The intercourse began consensually. However, unbeknownst to BE, Appellant retrieved a bullwhip.[7] While penetrating her, Appellant wrapped the bullwhip around BE's neck several times and applied pressure causing her to pass out. BE eventually

---

[5] The following background is drawn primarily from BE's trial testimony, supplemented by other evidence from the record of trial.

[6] BE testified that this intercourse was nonconsensual. The members acquitted appellant of the offense encompassing this conduct.

[7] BE subsequently learned that Appellant kept a box under his bed with certain items that he occasionally used during sex. She was not allowed to see what was in the box.

regained consciousness and noticed semen on the inner part of her thigh and her vagina. The next day, Appellant commented that the bullwhip was "awesome," winked at BE, and walked away. In her testimony, BE explained she did not respond because she was scared. BE did not consent to Appellant strangling her with the bullwhip or continuing to penetrate her while she was passed out.

Around 20 May 2020, Appellant and BE engaged in sexual intercourse. It began consensually. Without discussion or permission, Appellant put a ball gag over her head and in her mouth. BE did not fight it because she thought that "it will get over faster" if she did not. She could breathe with the ball gag on as it had holes in it. A few days later, about 25 May 2020, while having sexual intercourse, Appellant again put the ball gag on BE. This time was different. BE attempted to breathe through the holes in the ball gag, but was unable to breathe. Appellant started pinching her nose and holding it closed. BE struggled, moving her head side-to-side, but Appellant held her nose and appeared to become more excited by her struggle. When Appellant finished having sexual intercourse with BE, he removed the ball gag. He asked BE, "[D]id you notice anything different this time?" BE said that she could not breathe. Appellant chuckled and said, "[Y]eah, I put Q-tips in here and I cut the ends off." The broken cotton swabs blocked the breathing holes. BE told Appellant that it was scary, to which Appellant replied, "You'll be fine."

Despite these incidents, BE remained with Appellant because she thought he was charming and sweet beyond these occurrences. Also, BE, a single mother, appreciated having Appellant as a father figure for her two children. BE perceived that when Appellant drank alcohol, he was a different person.

In the course of their relationship, the topic of breast augmentation arose in their conversations. They decided that BE would get a breast augmentation and scheduled the surgery for 24 June 2020. After the surgery and upon her return home, Appellant was responsible for helping BE recover. In the days following the surgery, Appellant sexually assaulted BE on multiple instances in a variety of different ways: orally, vaginally, and anally with his penis, finger and an enema injector.[8] BE was physically unable to resist because she was in post-surgical recovery. In one instance, Appellant unexpectedly placed a plastic bag over BE's head and began suffocating her. After he removed the bag, he immediately penetrated her mouth with his penis.

---

[8] BE's testimony provided details of the individual instances including how Appellant's penetration induced her vomiting, which was met with Appellant backhanding her to the face and saying later, "that was hot."

Following the days of sexual and physical assault and abuse, BE had decided that she needed to escape. She noted that Appellant had an upcoming deployment. Her plan was to leave with her children and cut off communications with him when he left, and at that point, she would never have to see him again.

Before the scheduled deployment, on 12 July 2020 Appellant and BE attended a family gathering. While there, Appellant was sprayed by a skunk. Appellant showered and attempted to remove the smell before going to bed. He and BE agreed that he would sleep in another room because he could not get rid of the skunk smell. Before Appellant went to the other room, he wanted a goodnight kiss from BE. BE reluctantly gave him a quick kiss. This was not enough for Appellant. He snatched BE's phone away from her and pushed her causing her to hit her shin on the bed frame. Hearing the commotion, BE's eight-year-old daughter came to the room. She began screaming and crying. She told Appellant to stop hurting her mother. Appellant said it was BE's fault but that he still loved her (the daughter). The daughter said, "[I]f you love me, you will stop hurting my mom." The daughter ran downstairs and called BE's mother, who lived close by. Meanwhile Appellant started filling a bag with items. During the exchange, Appellant said to BE, "[D]on't call 911, you'll ruin my career," and returned BE's phone. Within a few minutes, BE's mother and BE's brother arrived at the home. BE's mother took BE's daughter out of the home. BE's brother supervised as Appellant filled the bag and left the home.

The next day, BE talked to a family friend who worked for a local civilian law enforcement agency about what happened. An investigation ensued.

## II. DISCUSSION

### A. Defense Motion to Dismiss or Compel Disclosure or Production

Appellant alleges the military judge erred by denying his motion to dismiss or, in the alternative, ordering production or disclosure to trial defense counsel the full extraction of BE's cell phone.

#### 1. Additional Background

Following BE's report to civilian law enforcement, the agency contacted the Air Force Office of Special Investigations (OSI). OSI became the lead agency for the investigation. OSI received information regarding BE's prior interview with the civilian law enforcement agency. On 29 July 2020, the two agencies conducted a joint interview of BE. BE referenced her phone multiple times in answering questions. They asked BE if she would consent to provide information from her phone. BE consented to the investigators downloading location-related information. They explained to BE that the entire contents of the phone would be downloaded but that the search would be limited to the

location-related information, in accordance with BE's consent. Investigators downloaded information from BE's phone and returned the phone to her. The information downloaded was placed on a flash drive that the civilian law enforcement agency kept as evidence.

Pretrial, the Defense repeatedly requested disclosure of BE's cellphone extraction. Trial counsel responded to these requests. Prior to 1 June 2022, trial counsel was apparently not aware BE's cell phone data had been extracted. On 1 June 2022, trial counsel advised trial defense counsel that the extraction contained more than location data, but BE's consent was limited to location data and thus the Government's review of the extraction was limited to location data. In response to the defense request, but limiting the response consistent with BE's consent parameters, trial counsel disclosed thousands of pages of location data to trial defense counsel.

Trial defense counsel moved to dismiss all charges and specifications with prejudice alleging discovery violations by trial counsel. Alternatively, trial defense counsel requested that the military judge order disclosure of the full contents of BE's cell phone or, if the military judge found that the contents were not in the custody and control of the Government, production of the evidence pursuant to Rule for Courts-Martial (R.C.M.) 703. The military judge found that the Government was negligent in not knowing about the cell phone data and informing the Defense of its existence. After having received evidence and hearing arguments on the motion, the military judge determined that the granted continuance of four months remedied the neglect and denied the motion to dismiss. The military judge also denied the motion to compel disclosure or production.

### 2. Law

In reviewing discovery matters, we conduct a two-step analysis: "first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *United States v. Coleman*, 72 M.J. 184, 187 (C.A.A.F. 2013) (quoting *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004)). The Government shall, after service of charges, upon a defense request, permit inspection of items "relevant to defense preparation." R.C.M. 701(a)(2)(B)(i). *Roberts* is instructive on how to review a military judge's discovery decision:

> An appellate court reviews a military judge's decision on a request for discovery for abuse of discretion. *United States v. Morris*, 52 M.J. 193, 198 (C.A.A.F. 1999). A military judge abuses his discretion when his findings of fact are clearly erroneous, when

he is incorrect about the applicable law, or when he improperly applies the law.

59 M.J. at 326.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "A military accused also has the right to obtain favorable evidence under Article 46, UCMJ, 10 U.S.C. § 846 (2006), as implemented by R.C.M. 701–703." *Coleman*, 72 M.J. at 186–87 (footnotes omitted). Accordingly, "Article 46[, UCMJ,] and its implementing rules provide greater statutory discovery rights" to a military accused than those afforded by the Constitution. *Id.* at 187 (citations omitted); *see also Roberts*, 59 M.J. at 327 (analyzing the "the broad nature of discovery rights granted the military accused under Article 46," UCMJ).

Article 46(a), UCMJ, states, "the trial counsel, the defense counsel, and the court-martial shall have *equal* opportunity to obtain witnesses and other evidence. . . ." (Emphasis added).

"Trial counsel must exercise due diligence in discovering [favorable evidence] not only in his possession but also in the possession . . . of other 'military authorities' and make them available for inspection." *United States v. Jackson*, 59 M.J. 330, 334 (C.A.A.F. 2004) (alterations in original) (quoting *United States v. Simmons*, 38 M.J. 376, 381 (C.M.A. 1993)). "[T]he parameters of the review that must be undertaken outside the prosecutor's own files will depend in any particular case on the relationship of the other governmental entity to the prosecution and the nature of the defense discovery request." *United States v. Williams*, 50 M.J. 436, 441 (C.A.A.F. 1999). The scope of this due-diligence requirement is generally limited to:

> (1) the files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses; (2) investigative files in a related case maintained by an entity closely aligned with the prosecution; and (3) other files, as designated in a defense discovery request, that involved a specific type of information within a specified entity.

*Id.* (internal quotation marks and citations omitted).

Where the defense makes a "specific [discovery] request for the undisclosed information . . . [,] we apply the heightened constitutional harmless beyond a reasonable doubt standard." *Coleman*, 72 M.J. at 187 (citations omitted).

In addition to the discovery rights described above, R.C.M. 703 provides that "[e]ach party is entitled to the production of evidence which is relevant

and necessary." R.C.M. 703(e)(1); *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Mil. R. Evid. 401. "Relevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." *Rodriguez*, 60 M.J. at 246 (internal quotation marks and citation omitted). The moving party is required, as a threshold matter, "to show that the requested material existed." *Id.*

### 3. Analysis

#### a. Dismissal

The military judge did not abuse his discretion in denying the defense Motion to Dismiss with Prejudice all charges and specifications. As the military judge correctly noted, dismissal is a drastic remedy that is not appropriate where alternative remedies exist that can render an error harmless. *United States v. Stellato*, 74 M.J. 473, 488 (C.A.A.F. 2015) (citation omitted). Regarding trial counsel's failure to timely disclose the location data to trial defense counsel, the military judge granted a continuance for the length of time requested in the joint motion. He correctly concluded that the trial defense counsel failed to show prejudice in light of this continuance because they had "the same amount of time [as the trial counsel] to review the evidence, adjust its strategy if necessary, and perform additional investigation if necessary." He also found that the Defense failed to substantiate their claim that their defense was "irrevocably damaged." Rather, the military judge discussed the matters before the court regarding specific witnesses and counsel availability and found that "the [D]efense has failed to demonstrate that the continuance already granted does not suffice to remedy any prejudice caused by the [G]overnment's negligence."

Regarding the nondisclosure of the other contents of the extraction of BE's cell phone, for the reasons discussed below, the nondisclosure, if erroneous, did not result in any prejudice. Therefore, dismissal would not have been an appropriate remedy.

#### b. Disclosure or Production

The military judge found that disclosure of the entirety of the extraction of BE's phone was not required. In doing so, he concluded that only the location data, which BE consented to provide, was in the "'legal' possession, custody, or control" of the Government, noting that while such requirement was not stated in R.C.M. 701(a)(2)(A), it was "necessarily implied." Appellant argues that the military judge erred by concluding that there was a distinction in trial counsel's obligations to disclose items in the possession, custody, or control of the

Government versus items in the "legal" possession, custody, or control of the Government under the discovery rules. We need not decide whether a trial counsel has an obligation to disclose in one instance and not the other to resolve Appellant's claim of error. We can presume error and resolve the matter by evaluating prejudice.

Here, the nondisclosure of the contents of BE's phone was harmless beyond a reasonable doubt. Trial defense counsel sought and argued that they were entitled to the entirety of the extraction of BE's phone. However, they already had the text message conversation between BE and Appellant. This conversation included pictures included in the text message conversations about which they were seeking additional disclosure or production. The military judge noted that the Defense was already in possession of the text messages between BE and Appellant. At trial, BE was cross-examined with those 91 pages of text message exchanges, including the pictures. The military judge recognized,

> The [D]efense already has the evidence that BE had the pictures, sent them to [Appellant], and sent the messages to [Appellant]. Evidence that BE sent the pictures carries with it the logical inference, as the [D]efense suggests, that she had them on her phone, from which it can be argued that they were sent to her or sought out and downloaded by her.

Furthermore, the military judge found,

> [t]he [D]efense failed to demonstrate (1) that the evidence sought of how the pictures allegedly sent from BE got onto BE's phone exists [on the full extraction], (2) that any such evidence is necessary, particularly in light of the evidence already available to the [D]efense, or (3) that the possibility of the existence of such evidence which might be of any assistance to the [D]efense warrants the production of the [full extraction of the phone].

In other words, in addition to the disclosed location data, the Defense already had the evidence that was likely to be found on the phone that would be helpful to them in the form of the pictures and the 91 pages of text message exchanges. That there was any additional helpful information to the Defense on the remaining portions of the extraction was highly speculative. Our review of the record leaves us convinced that the nondisclosure of the full extraction of the phone sought by the Defense, if it was erroneous, was harmless beyond a reasonable doubt.

**B. Factual Sufficiency**

**1. Law**

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399). This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted); *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

**2. Analysis**

Appellant challenges the factual sufficiency of each of his convictions.[9] He essentially argues that BE's testimony could not be believed beyond a reasonable doubt because it was uncorroborated, inconsistent, and undercut by a witness who opined that BE was untruthful.

Appellant argues first that the "crucial points of BE's allegations were uncorroborated." It is unremarkable that conclusive evidence related to the specific elements of some of the offenses outside of BE's testimony was not presented. In cases involving physical or sexual assault where only two people are typically present, it is often the case that such evidence is unavailable. However, to say that BE's testimony was uncorroborated is inaccurate. The Government presented evidence that the mechanisms used to complete offenses (e.g., bullwhip and ball gag) were found exactly where BE said they could be found and admitted pictures of those items. The Government presented evidence that supported pertinent parts of BE's testimony, specifically, a picture of the Mile High Club pin Appellant gave to BE as well as the logbook marked with stars on applicable dates, which matched the dates BE provided as the

---

[9] Appellant does not assert the military judge incorrectly instructed on the elements of each of the specifications at issue. As Appellant's challenge to the factual sufficiency of his convictions centers on BE's credibility, we address those arguments without identifying each element of each offense of which Appellant was convicted.

offense dates. The Government presented a picture of the bruising to BE's shin after being pushed into the bedframe. Additionally, the Government presented testimony from BE's mother, brother, and daughter who corroborated the 12 July 2020 incident. The evidence presented sufficiently corroborated BE's testimony to support a finding that the convictions were factually sufficient.

Appellant next argues that BE's testimony was inconsistent. Trial defense counsel was fully permitted to explore potential inconsistencies with BE on cross-examination at trial. BE provided reasonable explanations for the inconsistencies raised. Review of BE's testimony in full, and the examination related to inconsistencies in particular, does not raise reasonable doubt in our minds as to Appellant's guilt of the offenses.

Finally, Appellant points to BE's former friend's testimony that BE was untruthful. The members were also presented with testimony from this witness that at some point BE blocked the witness on social media, making the witness feel cast aside, and that the witness did not like that. The members were presented with this testimony and were able to assess the witness's credibility. This testimony alone or in conjunction with the remainder of the evidence in this case does not raise a reasonable doubt in our minds as to Appellant's guilt of the offenses.

After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *Reed*, 54 M.J. at 41.

## C. Ambiguous Conviction

### 1. Law

We review de novo whether a verdict is ambiguous such that it precludes us from performing a factual sufficiency review. *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010) (citation omitted).

A Court of Criminal Appeals (CCA), in the course of its review process, cannot conduct "a factual sufficiency review of an [appellant's] conviction when 'the findings of guilty and not guilty do not disclose the conduct upon which each of them [were] based.'" *United States v. Trew*, 68 M.J. 364, 366 (C.A.A.F. 2010) (quoting *United States v. Walters*, 58 M.J. 391, 397 (C.A.A.F. 2003)).

"With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.'" *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (quoting *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997)).

"A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence

supports at least one of the means beyond a reasonable doubt." *Id.* (citing *United States v. Griffin*, 502 U.S. 46, 49–51 (1991)) (additional citation omitted).

"It makes no difference how many members chose one act or the other, one theory of liability or the other. The only condition is that there be evidence sufficient to justify a finding of guilty on any theory of liability submitted to the members." *United States v. Rodriguez*, 66 M.J. 201, 205 (C.A.A.F. 2008) (quoting *Brown*, 65 M.J. at 359).

**2. Analysis**

Appellant argues that we cannot conduct our review of his conviction for rape by using unlawful force on divers occasions between 17 May 2020 and 25 May 2020 because he was charged and acquitted of sexual assault by committing a sexual act on divers occasions between 17 April 2020 and 4 July 2020. Appellant argues that he could not be guilty of the elements of the rape as alleged in Specification 1 of Charge I without also being guilty of each and every element of Specification 4 of Charge I. We disagree.

Review of the record makes it clear that the factual basis for the rape specification at issue was Appellant's conduct related to his use of the bullwhip and ball gag. BE's testimony closely matched the charged timeframe, indicating that the bullwhip incident happened on the evening of 16 May 2020 (into the early morning hours of 17 May 2020), that the first ball gag incident occurred about 20 May 2020 and the second about 25 May 2020. Further, trial counsel made it known to the members that this conduct was the basis for this rape specification.[10]

This clarity is emphasized by the fact that trial defense counsel did not request or move for a bill of particulars, request more specific findings instructions related to this issue, or object to trial counsel's findings argument asserting that they were not on notice of which conduct substantiated this offense. The conviction for Specification 1 of Charge I is not ambiguous and we are fully able to complete our review of this conviction.

**D. Trial Counsel Argument**

Appellant alleges that trial counsel made several improper arguments and as a result, requests the court to set aside the findings and sentence. His brief raises five categories of allegations of improper argument, including:

---

[10] In his findings argument, trial counsel said, "The rape referred to those times were [sic] forcefully using the whip, forcefully using the ball gag. Now we[']re just talking about times of penetration of her vulva where she didn't consent, and those are specifically referring to the flying incidents."

comments on Appellant's exercise of his rights; burden shifting; expressing personal opinions, vouching, and bolstering; going beyond the evidence of record; and injecting improper considerations.

Trial defense counsel did not object to any portion of the trial counsel's arguments or request any additional instructions in light of any of the arguments presented.

**1. Law**

"Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citations omitted). A prosecutor's interest "in a criminal prosecution is not that [the Government] shall win a case, but that justice shall be done." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

We review prosecutorial misconduct and improper argument de novo. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). When no objection is made at trial, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (footnote and citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id*. at 401 (quoting *Fletcher*, 62 M.J. at 179).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)) (additional citations omitted). In performing our review, "it is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id*.

> Appellate judges must exercise care in determining whether a trial counsel's statement is improper or has improper connotations. The [United States] Supreme Court has emphasized that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

*United States v. Palacios Cueto*, 82 M.J. 323, 333 (C.A.A.F. 2022) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, (1974)). Thus, "[a] statement that might appear improper if viewed in isolation may not be improper when viewed in context." *Id*. (citing *Donnelly*, 416 U.S. at 645).

If we find a prosecutor's argument "amounted to clear, obvious error," we then determine "whether there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Voorhees*, 79 M.J. at 9 (internal quotation marks and citations omitted). "For constitutional errors, rather than the probability that the outcome would have been different, courts must be confident that there was *no reasonable probability* that the error *might have contributed* to the conviction." *United States v. Tovarchavez*, 78 M.J. 458, 462 n.5 (C.A.A.F. 2019) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). That is, "where a forfeited constitutional error was clear or obvious, 'material prejudice' is assessed using the 'harmless beyond a reasonable doubt' standard set out in *Chapman*." *Id*. at 460 (quoting *United States v. Jones*, 78 M.J. 37, 45 (C.A.A.F. 2018)). In analyzing prejudice from a prosecutor's improper argument, we consider: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Andrews*, 77 M.J. at 402 (quoting *Fletcher*, 62 M.J. at 184).

"Absent evidence to the contrary, [we] may presume that members follow a military judge's instructions." *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted).

"[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

In a plain error analysis, the most straightforward way of resolving an allegation of prosecutorial misconduct may be to do so based on prejudice. *Palacios Cueto,* 82 M.J. at 335.

**2. Analysis**

Appellant urges us to find that trial counsel's arguments were, in part, comments on Appellant's constitutional rights. He points first to trial counsel's use of the word "uncontroverted" when referring to Appellant's sexual preferences as well as trial counsel's arguments regarding BE's refusal to turn over her cell phone. Specifically, trial counsel stated,

> He is a man who has some dark and frankly violent sexual appetites. BDSM. He likes BDSM. That's clear -- it's uncontroverted. OSI told you about how they went into his home. Right? They find the whips, the ball gags, the harnesses -- everything. Clearly Captain Braum likes BDSM.

Appellant relies on our decision in *United States v. Carter*, No. ACM 35027, 2003 CCA LEXIS 257 (A.F. Ct. Crim. App. 17 Oct. 2003) (unpub. op.), where we held that the trial counsel's repeated characterization of the evidence as

"uncontradicted" and "uncontroverted" was an improper comment upon Appellant's exercise of his right to remain silent. This case is significantly distinguishable from *Carter*. Here, trial counsel's singular use of the word "uncontroverted" was not a comment—directly, indirectly, or by innuendo—on the fact that Appellant did not testify. BE's testimony as well as the seizure by investigators of items associated with this type of sexual activity provided a factual basis for trial counsel's argument. Furthermore, forms of evidence besides Appellant's testimony could have rebutted Government's characterization of his sexual proclivities. For example, testimony from Appellant's previous partners, any other findings related to these interests (*e.g.*, web searches, purchase histories from Appellant's accounts) could have been presented by the Government or the Defense to undermine or support these assertions. Thus, we find trial counsel's comment on the state of the evidence in this particular case was not improper.[11]

Appellant next points to trial counsel's rebuttal argument inviting the trial defense counsel to "please explain in the host of lies that you claim there to be, why is she lying about what happened to her?" He argues that such an argument shifts the burden to the Defense to disprove his guilt. We are mindful that we must view argument by counsel "within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *Baer*, 53 M.J. at 238. First, this comment asserts a deficiency in trial defense counsel's argument in that BE did not have a motive to lie. This comment urges the trial defense counsel to explain this motive, if any, to the members. Second, this comment was made in rebuttal minutes after trial defense counsel presented closing argument wherein he accused BE of lying, deceiving, and misleading trial counsel, the Defense, and the members. These assertions were made no fewer than 15 times. The record plainly demonstrates that trial counsel's rebuttal comment here was in direct response to trial defense counsel's argument that BE was lying. This was not a burden shift. It was a response to the highly emphasized theory that BE "lied to [the court members]. She lied to the prosecutors. She lied to [trial defense counsel] and she lied to law enforcement." We hold that trial counsel's invitation to trial defense counsel to refer to evidence in the record to substantiate

---

[11] We emphasize that the mere use of the words "uncontradicted" and "uncontroverted" do not raise *per se* error. However, we note that trial counsel who choose to utter them wade into dangerous waters.

his repeated (and mostly improper) assertions that BE was lying was a fair response.[12]

Beyond allegations that trial counsel improperly commented on Appellant's constitutional rights, Appellant alleges that trial counsel expressed his personal opinion, vouched, and bolstered BE's testimony; went beyond the evidence of record; and injected improper considerations. The first category of comments relates to trial counsel stating in different variations that BE was telling the truth. Our superior court has made clear that trial counsel assertions in this way are obvious error. *Voorhees*, 79 M.J. at 12.

The next category of comments relates to trial counsel's arguments essentially providing "expert-like" commentary about victimology in domestic violence cases, dynamics of "BDSM" sexual relationships, and alcoholism. The inferences trial counsel seems to make are not reasonably raised by the evidence and were, therefore, error.

Appellant also points to trial counsel comments that inject improper considerations. Trial counsel argued in relation to the reckless operation of an aircraft offense, "*This is not the kind of flying that can be approved of by the Air Force.* A pilot in the Air Force. That is reckless operation." (Emphasis added). This argument is obvious error.[13]

Appellant alleges impropriety in trial counsel's rebuttal argument, "And so again members *I ask that you do the right thing* in finding [Appellant] accountable and finding him guilty of all charges and specifications." (Emphasis added.)

We note that trial defense counsel had argued earlier in his closing argument,

> [Y]ou're going to become -- looking at all the other evidence that makes you have that uncomfortable feeling, and you're going to want to do the right thing. That's human nature you're going to want to do the right thing. But that burden is for you, so tomorrow when you wake up, you don't have to think, "Did I get it right?"

---

[12] It is clear and obvious error for a counsel (trial or defense) to assert that a witness is telling the truth or is lying. *Voorhees*, 79 M.J. at 10. Counsel may discuss the evidence and emphasize what the evidence supports, but their personal opinions on the veracity of a witness have no proper place in a court-martial proceeding.

[13] During oral argument before this court, government appellate counsel conceded error with regards to this comment.

Trial counsel's comment about doing "the right thing" seems to be in response to this argument by trial defense counsel and was not improper.

Appellant points to other comments by trial counsel. We need not address each of those individually. We presume, without deciding, that each of the remaining alleged improper statements were clear and obvious error and subsume those statements in our analysis below regarding whether the argument in its entirety resulted in prejudice to Appellant. As we do not find that trial counsel's comments pertain to Appellant's constitutional rights, we need not determine prejudice using the constitutional review standard of harmless beyond a reasonable doubt. *Tovarchavez*, 78 M.J. at 460. Rather, we apply the plain error prejudice analysis to determine "whether there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Voorhees*, 79 M.J. at 9 (internal quotations marks and citations omitted). To do so, we evaluate "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Andrews*, 77 M.J. at 402 (quoting *Fletcher*, 62 M.J. at 184). We find that there is not a reasonable probability that, but for the errors, the outcome of the proceeding would have been different.

The severity of the trial counsel misconduct was moderate. In making this determination, we note multiple erroneous assertions but also recognize that this case is not comparable to trial counsel's argument in *Voorhees*. The prosecutor in *Voorhees* made "a spectacle of himself" relaying and bolstering the government's case by touting his personal position and achievements. 79 M.J. at 13–14. This case does not involve such theatrics. While trial counsel's assertions that BE was telling the truth was improper, a review of this record illustrates that from the trial defense counsel's opening statement through the completion of counsel's closing arguments, the defense counsel's advocacy centered on assertions of BE's veracity. Trial counsel argued that BE was telling the truth and trial defense counsel argued that she was lying. Again, such assertions by trial counsel were improper, but are not viewed in a vacuum ignoring trial defense counsel's simultaneous impropriety. The additional erroneous comments were unpersuasive and seemingly unimpactful commentary, none warranting objection and many not even prompting a defense response by way of counter-argument.

There were no specific measures adopted to cure trial counsel's improper arguments. The military judge did instruct the members that each counsel's argument is not evidence and that it was the members' responsibility to judge the credibility of the witnesses. Trial defense counsel did not object to the arguments. The record does not reflect whether this was a tactical decision to not object in order to enable his continued expression of the theory that BE was

lying. Nevertheless, the lack of a defense objection is some measure of the minimal impact of a prosecutor's improper comments. *Gilley*, 56 M.J. at 123.

As discussed above regarding the factual sufficiency challenges, the weight of the evidence well supported the convictions. We also are compelled to recognize that this officer-member panel, comprised of one O-6, two O-5s, two O-4s and two O-3s, returned mixed findings in this case. This fact is particularly germane to this prejudice analysis in that the members were obviously not led down the primrose path set forth by the O-3 trial counsel or the O-4 trial defense counsel in this case. The arguments were very lengthy, repetitive, and not particularly persuasive from either side. Our review of the record leads us to believe that the members endured counsel arguments, rather than having been aided or persuaded by them. We are convinced that the members decided this case based on the evidence alone, not by trial counsel's (or trial defense counsel's) improper arguments. *See United States v. Young*, 470 U.S. 1, 17–18 (1985). Therefore, Appellant was not prejudiced by trial counsel's erroneous arguments.

### E. Lawfulness of Consecutive Confinement Terms

#### 1. Law

R.C.M. 1002 sets forth the guidance for determination of a sentence. When an accused is sentenced by a military judge at a general or special court-martial, the military judge "shall determine an appropriate term of confinement . . . for each specification for which the accused was found guilty." R.C.M. 1002(d)(2)(A). The appropriate amount of confinement is determined for each specification separately. R.C.M. 1002(d)(2)(A), Discussion. The appropriate amount of confinement is left to the "discretion of the military judge subject to these rules." *Id.*

"If a sentence includes more than one term of confinement, the military judge shall determine whether the terms of confinement will run concurrently or consecutively." R.C.M. 1002(d)(2)(B).

> The terms of confinement for two or more specifications shall run concurrently—
> (i) when each specification involves the same victim and the same act or transaction;
> (ii) when provided for in a plea agreement;
> (iii) when the accused is found guilty of two or more specifications and the military judge finds that the charges and specifications are unreasonably multiplied; or
> (iv) when otherwise appropriate under subsection (f) . . . .

*Id.* "A military judge may exercise broad discretion in determining whether terms of confinement will run concurrently or consecutively consistent with R.C.M. 1002(f)." R.C.M. 1002(d)(2)(B), Discussion.

"In sentencing an accused under this rule, the court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration [several factors]." R.C.M. 1002(f).

### 2. Analysis

Appellant challenges the military judge's sentence adjudging confinement to run consecutively for Specifications 3, 6, and 9 of Charge I. In Specification 3, Appellant was convicted of raping BE by penetrating her mouth with his penis using unlawful force on divers occasions between 17 April 2020 and 10 July 2020. In Specification 6, Appellant was convicted of committing a sexual act on BE by penetrating her anus with an enema injector without her consent on divers occasions on 5 July 2020. In Specification 9, Appellant was convicted of abusive sexual contact on BE by causing his penis to touch her breasts without her consent on divers occasions between 25 June 2020 and 10 July 2020.

We review a military judge's determination that a specification's confinement term should run concurrently or consecutively to another specification for abuse of discretion. *See* R.C.M. 1002(d)(2)(B), Discussion. The abuse of discretion standard is strict and involves "more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). "The challenged action must be arbitrary, fanciful, clearly unreasonable or clearly erroneous." *Id*. (internal quotation marks omitted) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

Whether an act or transaction is "the same" is a factual determination. Here, the military judge's determination that these acts or transactions were not entirely the same is not clearly erroneous. Both parties acknowledge that on some of the instances, there may have been some overlap between these three specifications. They also acknowledge that there were incidents that did not overlap. For example, regarding Specification 3, there were incidents where Appellant committed this offense that were not within the same transaction as the acts committed in Specification 9. Appellant essentially argues that because there may have been some overlap in the transactions between some of the instances charged in the specifications, then the specifications should have been treated as if all the transactions were "the same" pursuant to R.C.M. 1002(d)(2)(B)(i). We decline to adopt this interpretation of this provision

A more appropriate way to read this provision is to merely give effect to the plain language, "when each specification involves the same victim and the

same act or transaction." R.C.M. 1002(d)(2)(B)(i).[14] The presence of the language "on divers occasions" may, when all of the occasions do not coincide with other transactions encompassed in other specifications, remove the obligation to adjudge concurrent confinement terms for these specifications.[15]

The military judge in Appellant's case exercised his broad discretion to determine whether terms of confinement will run concurrently or consecutively. The military judge evaluated the evidence and adjudged that several of the confinement terms would run concurrently, and several would run consecutively. This determination was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous and thus, not an abuse of discretion.

## F. Timely Appellate Review

### 1. Additional Background

The military judge sentenced Appellant on 28 October 2022. Appellant's record of trial was docketed with this court on 13 March 2023. Over the Government's objection, this court granted Appellant's nine requests for enlargement of time to file his assignments of error brief. Appellant's brief was filed on 9 February 2024, 333 days after the case was docketed with the court. On 16 May 2024, the Government filed their answer to Appellant's brief. On 22 May 2024, Appellant filed his reply brief and requested to present oral argument. We granted the request and heard oral argument on 2 July 2024.

### 2. Law

This court recognizes "convicted servicemembers have a due process right to timely review and appeal of [their] courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay also arises when appellate review is not completed, and a decision not rendered within 18 months of a case being docketed. *Id.* at 142. If there is a presumptive or an otherwise facially unreasonable delay, we examine the matter under the four non-exclusive factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the

---

[14] *See also United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (holding in the absence of a statutory definition, the plain language of a statute will control unless it is ambiguous or leads to an absurd result).

[15] It is important to note that interpretation of the R.C.M. in this manner does not erase a military judge's ability to determine that a sentence should be adjudged utilizing concurrent confinement terms. It still permits him or her to do so after evaluating the factors set forth in R.C.M. 1002(f). Rather, it is consistent with this Rule's express intent that a military judge should have "broad discretion in determining whether terms of confinement will run concurrently or consecutively consistent with R.C.M. 1002(f)." R.C.M. 1002(d)(2)(B), Discussion.

reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker*, 407 U.S. at 530) (additional citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 3. Analysis

Decision in Appellant's case was not rendered within 18 months from date of docketing. However, Appellant has not raised any issue with this court concerning the post-trial processing of his case and likewise has not claimed any prejudice as a result of the delay.

In *Moreno*, the United States Court of Appeals for the Armed Forces identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of an appellant's grounds for appeal. *Moreno,* 63 M.J. at 138–39 (citations omitted). As to the first type of prejudice, where Appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, looking at the third type of prejudice, where Appellant's substantive appeal fails, his grounds for appeal is not impaired. *Id.* at 140. Finally, with regards to the second type of prejudice, anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has made no showing of such particularized anxiety or concern with respect to the delay in question, and we perceive none in his case.

Finally, recognizing our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is appropriate.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred.

Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court